**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 32**

Docket No. AT-0752-14-0475-I-1

**Thomas Michael Dieter,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

September 14, 2022

Ward A. Meythaler, Tampa, Florida, for the appellant.

T. B. Burton, Esquire, Bay Pines, Florida, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which affirmed his removal. For the reasons discussed below, we DENY the petition for review and AFFIRM the initial decision.

BACKGROUND

¶2 The appellant is a Roman Catholic priest and was formerly employed as a Chaplain, GS-0060-12, at the Department of Veterans Affairs Medical Center (VAMC) in Bay Pines, Florida. Initial Appeal File (IAF), Tab 4 at 12, Tab 46 at 135. The agency has a qualification standard requiring all Chaplains to have an

"ecclesiastical endorsement, dated within the past 12 months, from the official national endorsing authority of their faith group or denomination." IAF, Tab 5 at 9. The agency's Veterans Health Administration Handbook defines an ecclesiastical endorsement as:

> [A] signed statement, by the official national endorsing agency of an ecclesiastical endorsing organization, certifying that an individual is in good standing with that religious faith group, and stating that the individual is, in the opinion of the endorsing agent, qualified to conduct all functions, sacraments, ordinances, ceremonies, rites, and/or observances required to meet the needs of patients.

*Id.* at 17. Thus, an ecclesiastical endorsement is provided by a Chaplain's religious faith group, and not by the agency or the Government. *Id.* at 9, 17. The Archdiocese for the Military Services, USA (AMS), a division of the Roman Catholic Church, provides ecclesiastical endorsements for Roman Catholic Chaplains with the agency, such as the appellant. IAF, Tab 4 at 34, Tab 5 at 28, 35.

¶3 By letters dated October 17, 2013, the AMS, through the Vicar for Veterans Affairs, notified the appellant and the agency that it had withdrawn the appellant's Ecclesiastical Endorsement and Faculties (ecclesiastical endorsement) to serve as a Chaplain with the agency. IAF, Tab 4 at 42-43. Shortly thereafter, on October 31, 2013, the agency proposed to remove the appellant for failure to maintain a condition of employment—specifically, his ecclesiastical endorsement. *Id.* at 39-40. The proposal notice explained that, as an agency Chaplain, the appellant was required to have an ecclesiastical endorsement from the official national endorsing authority of his faith group or denomination but that, by letter dated October 17, 2013, the AMS had withdrawn his endorsement. *Id.* at 39. The proposal notice further stated that, as a result of the withdrawal, the appellant was no longer able to perform work as a Chaplain for the agency and therefore was charged with failure to maintain a condition of employment. *Id.* The proposal notice indicated that the appellant's August 2013 reprimand for

disrespectful conduct would be taken into consideration in determining the penalty.[1] *Id.*

¶4  The appellant, through counsel, provided an oral and a written response to the proposed removal, arguing, among other things, that he could not adequately defend himself without information regarding AMS's decision to withdraw his ecclesiastical endorsement and urging the Director of the Bay Pines Department of Veterans Affairs Healthcare System (Director) to recuse herself as the deciding official because of her personal involvement in prior actions involving the appellant. *Id.* at 19-21; IAF, Tab 46 at 134‑35. The appellant acknowledged that he could not serve as a Chaplain without an ecclesiastical endorsement but requested reassignment to another position with the agency in lieu of removal. IAF, Tab 46 at 135. In a decision letter dated December 31, 2013, the Director sustained the single charge of failure to maintain a condition of employment and imposed the removal effective January 10, 2014. IAF, Tab 4 at 12-15.

¶5  The appellant appealed his removal to the Board and requested a hearing. IAF, Tab 1. The administrative judge issued an order finding that the Board lacked the authority to review the substance of the AMS's decision to withdraw the appellant's ecclesiastical endorsement and that the Board's review in this case was analogous to the Board's review of adverse actions under 5 U.S.C. § 7513 based on the denial, revocation, or suspension of a security clearance. IAF, Tab 27. In a prehearing order, the administrative judge advised the parties that the hearing would be limited to review of the appellant's removal and his due process and harmful procedural error affirmative defenses and notified them of

---

[1] In July 2013, the Chief of Chaplain Services proposed to reprimand the appellant for alleged disrespectful conduct based on his behavior towards the Director of the Bay Pines Department of Veterans Affairs Healthcare System (Director) on April 6, 2013, and for allegedly making inappropriate remarks regarding the Director on April 25, 2013. IAF, Tab 4 at 45-46. In August 2013, the Associate Director for Patient and Nursing Services (Associate Director) imposed the reprimand. *Id.* at 44.

their respective burdens of proof. IAF, Tab 49. After holding the requested hearing, the administrative judge issued an initial decision finding that the agency proved the charge, nexus, and the reasonableness of the penalty, and denying the appellant's affirmative defenses. IAF, Tab 59, Initial Decision (ID). Thus, the administrative judge affirmed the appellant's removal. ID at 31.

¶6      The appellant has filed a petition for review of the initial decision, arguing that the administrative judge erred in denying his affirmative defenses, failed to consider his argument that the agency committed a prohibited personnel practice by defaming and stigmatizing him, erred in denying his motion to compel, and improperly denied his request to admit an exhibit. Petition for Review (PFR) File, Tab 1.[2,3] The agency has responded in opposition to the appellant's petition for review.[4] PFR File, Tab 3.

_____

[2] On review, the appellant does not challenge the administrative judge's findings that the agency proved the charge and nexus, PFR File, Tab 1, and we discern no reason to disturb these well-reasoned findings, *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility). Although, as discussed below, the appellant challenges the administrative judge's determination that he failed to establish his affirmative defenses, he does not otherwise dispute the administrative judge's finding that the penalty of removal is reasonable for the sustained charge of failure to maintain a condition of employment. PFR File, Tab 1. We likewise discern no basis to disturb this finding and agree that removal is an appropriate penalty for failure to maintain a condition of employment. *See Crosby*, 74 M.S.P.R. at 106; *see also, e.g.*, *Penland v. Department of the Interior*, 115 M.S.P.R. 474, ¶ 11 (2010) (finding that a penalty of removal was reasonable when an appellant failed to maintain a pilot authorization required by his position).

[3] By notice dated April 20, 2017, the Office of the Clerk of the Board notified the appellant that his petition for review was missing page 5 and afforded him an opportunity to submit the missing page. PFR File, Tab 4. The appellant timely submitted a copy of page 5, PFR File, Tab 5 at 6, and we have accepted the page into the record on review.

[4] In May 2021, while the appellant's petition for review was pending, the appellant's counsel notified the Board that the appellant died on April 28, 2021. PFR File, Tab 6. On May 25, 2021, the Office of the Clerk of the Board issued an order advising that the

## ANALYSIS

The administrative judge properly found that the appellant failed to establish his constitutional due process affirmative defense.

¶7 The appellant argues on review, as he did below, that the agency violated his due process rights by providing false or misleading information to the AMS and by failing to give him proper notice and an opportunity to respond to that information and to the proposed removal. PFR File, Tab 1 at 8-12, 16-17. He also argues, as he did below, that his right to due process was violated because the deciding official was biased against him and considered ex parte information in deciding to impose the removal rather than reassigning him to a position that did not require an ecclesiastical endorsement. *Id.* at 17-23.

¶8 In the initial decision, the administrative judge thoroughly discussed the events leading up to the AMS's decision to withdraw the appellant's ecclesiastical endorsement and concluded that it was "entirely possible" that the AMS relied on information provided by the Chief of Chaplain Service to the

---

appeal may be dismissed if there is not a proper substitute for the appellant and providing instructions on how to file a motion for substitution. PFR File, Tab 7. Thereafter, the appellant's counsel moved that Francis H. Dionne be substituted as the party in this appeal, and he submitted evidence showing that Mr. Dionne was appointed as the personal representative of the appellant's estate in the Probate Division of the Circuit Court for Pinellas County, Florida. PFR File, Tabs 8-9. The agency did not file a response or opposition to the motion for substitution.

Pursuant to the Board's regulations, if an appellant dies during the pendency of his appeal, the processing of the appeal will only be completed upon the substitution of a proper party. 5 C.F.R. § 1201.35(a). Substitution is not permitted when the appellant's interests terminate due to his death. *Id.* The Board has permitted substitutions following an appellant's death in appeals involving adverse actions because, in such cases, monetary relief would have been recovered if the appeal was successful on the merits and the appellant's representative of his estate stood in line to receive that relief. *See Carpio v. Office of Personnel Management*, 94 M.S.P.R. 506, ¶ 5 (2003). Here, we find that the appellant's interests did not terminate upon his death because if the appellant's estate prevails, it will be entitled to monetary relief, such as back pay. We further find that the appellant's personal representative, Mr. Dionne, is responsible for managing any relief for the benefit of the appellant's estate. Therefore, we grant the appellant's motion for substitution.

agency's Liaison to the AMS in deciding to withdraw the appellant's ecclesiastical endorsement.[5]  ID at 9-14.  Nonetheless, the administrative judge concluded that the AMS, not the agency, made the decision to withdraw the appellant's ecclesiastical endorsement and that, once the AMS made such a decision, the agency could properly rely on the appellant's loss of his ecclesiastical endorsement as the basis for its action.  ID at 15-16.  Although the appellant does not appear to challenge the administrative judge's finding that the Board lacks the authority to review the AMS's decision, he argues that the agency violated his due process rights by providing "stigmatizing" information to the AMS without giving him notice and an opportunity to respond to that information and by failing to disclose the contents of all communications between the AMS and the agency that pertained to him.  PFR File, Tab 1 at 8-11.

¶9    We agree with the administrative judge's determination that the Board lacks the authority to review the AMS's decision to withdraw the appellant's

---

[5] The following events preceding the AMS's decision to withdraw the appellant's ecclesiastical endorsement are undisputed but, as discussed below, are irrelevant to the dispositive issues in this appeal.  During a mass on September 15, 2013, the appellant gave a homily to the congregation in which he stated that, while wearing the "Roman Collar" earlier that morning, he "hit" and "knocked out," or words to that effect, two teenage boys who were attempting to burglarize a veteran.  IAF, Tab 47 at 12, Tab 48 at 12.  The Chief of Chaplain Service reviewed a video of the homily and emailed the agency's Liaison to the AMS regarding the homily and other issues concerning the appellant.  IAF, Tab 46 at 45-48, Tab 47 at 11-13.  Several days later, the Liaison, the Chief of Chaplain Service, the Director, the Associate Director, and the Chief of Human Resources participated in a teleconference to discuss the appellant's situation.  IAF, Tab 47 at 31.  The Liaison stated during a deposition that he forwarded the email regarding the appellant and the video of his homily to someone within the Roman Catholic Church.  IAF, Tab 46 at 216.  Thereafter, the AMS withdrew the appellant's ecclesiastical endorsement.  IAF, Tab 4 at 42-43.  The AMS did not provide a reason for its decision and declined the appellant's request for a statement of reasons, asserting that it was "not required to disclose conditions or circumstances surrounding the removal of endorsements and/or faculties."  *Id.* at 34.  The appellant subsequently stated that he made up the story about going to the veteran's house during a burglary and, consequently, did not actually engage in the physical violence toward minors as suggested in his homily.  IAF, Tab 48 at 12.

ecclesiastical endorsement and is, in fact, precluded from doing so by the First Amendment. *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission*, 565 U.S. 171, 187-89 (2012) (finding that the state is precluded from interfering in a religious group's right to select and remove ministers under both the Establishment Clause and Free Exercise Clause of the First Amendment); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952) (holding that the freedom of a religion to select its clergy has constitutional protection against state interference as a part of the free exercise of religion). We further agree with the administrative judge's determination that, because an ecclesiastical endorsement is essentially a determination by a religious authority regarding who is qualified to perform religious activities on behalf of that religion in the role of a Chaplain, the appellant did not have a constitutionally protected property interest in his ecclesiastical endorsement, and the withdrawal of his endorsement does not implicate his due process rights. ID at 14-16; *see, e.g.*, *Serbian Eastern Orthodox Diocese for U.S. of America & Canada v. Milivojech*, 426 U.S. 696, 715 (1976) (holding that "[c]onstitutional concepts of due process, involving secular notions of 'fundamental fairness' or impermissible objectives, are . . . hardly relevant to such matters of ecclesiastical cognizance").

¶10        In sum, the appellant had no property or liberty interest in his ecclesiastical endorsement, no due process rights concerning the procedures used by the AMS in deciding to withdraw his endorsement, and no constitutional right to receive the documentary or testimonial evidence underlying the AMS's decision to withdraw his ecclesiastical endorsement. Thus, as the administrative judge correctly found, the agency did not violate the appellant's due process rights by providing information to the AMS without affording him notice and an

opportunity to respond or by providing allegedly stigmatizing information to the AMS.[6]  ID at 22-23.

¶11    The appellant did, however, have a property interest in his continued Federal employment.  *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1374-76 (Fed. Cir. 1999).[7]  Due process requires, at a minimum, that an employee being deprived of his property interest be given the opportunity to be heard at a meaningful time and in a meaningful manner.  *Palafox v. Department of the Navy*, 124 M.S.P.R. 54, ¶ 9 (2016).  In the context of an adverse action based on the suspension of access to classified information, the Board has held that the agency provided the appellant minimal due process by informing him of the basis for the action, i.e., that his position required access to classified information and that his access had been suspended.  *Id.*, ¶ 10.  Here, the appellant received written notice clearly stating that the agency proposed his removal on the basis of one charge of failure to maintain a condition of employment following the withdrawal of his ecclesiastical endorsement by the AMS.  IAF, Tab 4 at 39.  The proposal notice explained that an ecclesiastical endorsement was a requirement of his position and that, as a result of the

---

[6] In the initial decision, the administrative judge found that, even if the appellant had a liberty interest in his reputation with the AMS, the information provided by the agency to the AMS was not demonstrably false.  ID at 23 n.13.  Furthermore, contrary to the appellant's argument on review, the administrative judge did consider his argument that the agency committed a prohibited personnel practice by providing false or defamatory information to the AMS, but concluded that the appellant had not shown by preponderant evidence that the agency stigmatized him by providing false information to the AMS.  *Id.*; PFR File, Tab 1 at 11.  We discern no basis to disturb these findings.

[7] The U.S. Court of Appeals for the Federal Circuit's reasoning rests on the decision of the U.S. Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-39, 546-48 (1985), which held that a tenured public employee has a constitutionally protected property interest in ongoing public employment and that an agency may not deprive such an employee of his property interest without providing him with due process of law, including the right to advance notice of the charges against him, an explanation of the agency's evidence, and an opportunity to respond.

withdrawal, he was no longer able to perform work as a Chaplain for the agency. *Id.* The appellant had an opportunity to make both a written and an oral response to the deciding official, and the deciding official considered those responses. *Id.* at 13, 19-21; IAF, Tab 46 at 134-35. Therefore, we agree with the administrative judge's determination that the appellant received a meaningful opportunity to respond to the proposal notice, ID at 9-17, and find no merit to his assertion on review that the agency did not give him adequate notice of the charge against him, PFR File, Tab 1 at 16-17.

¶12    As noted above, the appellant also contends that his due process rights were violated because the Director, in her role as the deciding official, was biased against him. *Id.* at 17-20. An employee has a due process right to have an unbiased decision maker adjudicate his case. *Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 9 (2013). To establish a due process violation based on the identity of the deciding official, an employee must assert specific allegations indicating that the agency's choice of the deciding official made the risk of unfairness to the appellant intolerably high. *Id.* However, a deciding official's awareness of background information concerning the appellant, her concurrence in the desirability to take an adverse action, or her predisposition to impose a severe penalty does not disqualify her from serving as a deciding official on due process grounds. *Id.* Moreover, a deciding official's mere knowledge of an employee's background does not rise to the level of a due process violation unless "that knowledge is a basis for the deciding official's determination on either the merits of the underlying charge or the penalty to be imposed." *Id.* (quoting *Norris v. Securities & Exchange Commission*, 675 F.3d 1349, 1354 (Fed. Cir. 2012)).

¶13    Here, the appellant alleged below that the deciding official was biased against him, as evidenced by the following: she refused to meet with him on one occasion; she refused to allow him to be on stage with her at a Memorial Day service; she banned him from entering the executive suite; she had two armed

policemen present during his oral response; she placed him on authorized absence and restricted his access to the VAMC; she refused to consider his request to recuse herself as the deciding official; she was aware that he had called her "ugly" and a "hypocrite"; she was involved in the investigation leading to the agency's communication with the AMS; and she was a witness in the case. IAF, Tab 57 at 34-38. The administrative judge carefully considered these allegations but found that the appellant failed to establish that the Director, in her role as the deciding official, was actually biased against him or that the agency structured the situation in a manner that rendered the risk of unfairness intolerably high. ID at 24-26. In so finding, the administrative judge explained that the Director was at least three supervisory levels above the appellant and that her actions did not evidence bias, but rather were reasonable management practices. ID at 25. The administrative judge further found that the appellant's insults toward the Director were not so demeaning that the risk of her treating him unfairly as a result of his comments was intolerably high. *Id.* at 26.

¶14    On review, the appellant restates his arguments from below on this issue but does not identify any particular error in the initial decision. PFR File, Tab 1 at 17-23. Because these arguments were raised below and constitute mere disagreement with the administrative judge's well-reasoned findings and implicit credibility determinations, they provide no basis to disturb the initial decision. *See Davison v. Department of Veterans Affairs*, 115 M.S.P.R. 640, ¶ 9 (2011) (finding that mere disagreement with an administrative judge's explained findings is not a basis to grant a petition for review); *Crosby*, 74 M.S.P.R. at 106. Moreover, we have reviewed the record and agree with the administrative judge's determination that the appellant failed to show that the Director was biased against him or that the risk of bias was intolerably high. *See Norris*, 675 F.3d at 1354; *Lange*, 119 M.S.P.R. 625, ¶ 9.

¶15    The appellant further argued below that the Director, in her capacity as the deciding official, violated his due process rights by considering certain allegedly

disruptive acts that he had committed without notifying him in the proposal notice that these acts would be considered as part of the penalty analysis. IAF, Tab 57 at 38-39. The administrative judge found that the Director did not violate the appellant's due process rights by considering ex parte information, ID at 22, and the appellant challenges this finding on review, PFR File, Tab 1 at 20-23.

¶16      A deciding official violates an employee's due process rights when she relies on new and material ex parte information as a basis for her decisions on the merits of a proposed charge or the penalty to be imposed. *Mathis v. Department of State*, 122 M.S.P.R. 507, ¶ 6 (2015). An employee's due process right to notice extends to ex parte information provided to a deciding official and to information known personally to her if the information was considered in reaching the decision and was not previously disclosed to the appellant. *Id.*

¶17      Here, as noted above, the proposed removal notice specifically stated that the appellant's August 2013 reprimand for disrespectful conduct would be taken into consideration in determining the appropriate penalty. IAF, Tab 4 at 39. In the initial decision, the administrative judge noted the Director's hearing testimony that she considered reassigning the appellant to another position but that, in light of his prior discipline, she did not feel that reassignment was in the best interest of the service and her deposition testimony that she considered reassigning the appellant but decided against it because "[i]t was not a requirement and he had been disruptive." ID at 19-21; *see* IAF, Tab 45 at 40, Tab 52, Hearing Compact Disc (HCD) (testimony of the Director). The administrative judge further noted that the Director testified that she made her decision by considering the evidence file, the appellant's oral and written responses, and the *Douglas* factors,[8] and denied considering anything outside of

---

[8] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of 12 factors that are relevant in assessing the penalty to be imposed for an act of misconduct.

these sources. ID at 21; HCD (testimony of the Director). The administrative judge concluded that, although the Director believed that the appellant had been disruptive in the past, she did not testify that she considered any "disruptions" that were not referenced in the proposal notice. ID at 21-22. Thus, the administrative judge found that the Director did not violate the appellant's due process rights by considering ex parte information. ID at 22. On review, the appellant argues that the administrative judge mischaracterized the Director's testimony and that her testimony was, in fact, that she had considered other alleged "disruptive" behavior, in addition to the disrespectful conduct at issue in his prior reprimand, in deciding not to reassign him. PFR File, Tab 1 at 22-23.

¶18    Although, as noted above, the Director referenced the appellant's prior disruptive behavior as part of the reason she decided not to reassign him to another position, we agree with the administrative judge's determination that this testimony was in reference to the disruptive behavior at issue in the appellant's prior reprimand, which was specifically identified in the proposal notice, and not to other behavior that may have been disruptive but was not identified in the proposal notice.[9] HCD (testimony of the Director); IAF, Tab 4 at 39, 44-45, Tab 45 at 40. The appellant has not provided any basis on review to disturb the administrative judge's implicit credibility determinations or his well-reasoned findings. Accordingly, we do not disturb them. *See Crosby*, 74 M.S.P.R. at 106.

The administrative judge properly denied the appellant's harmful error affirmative defense.

¶19    The appellant also argued below that the agency failed to conduct an adequate investigation, as required by the Master Agreement, an internal agency policy, and the Privacy Act, prior to providing information about him to the

---

[9] In further support of this conclusion, the Director indicated in the *Douglas* factor worksheet that the appellant previously had "displayed disruptive behavior as evidenced by the proposed reprimand and reprimand." IAF, Tab 4 at 17.

AMS. IAF, Tab 57 at 20-24. He further argued that the agency's failure to conduct an adequate investigation under these authorities was harmful because, if the agency had interviewed him before it provided information to the AMS, he would have "had the opportunity to set the record straight that the homily was fictional and he had not assaulted a minor[.]" *Id.* at 24. Such an opportunity, he alleged, "may well have" stopped the agency's Liaison to the AMS from sending the information to the AMS or may have been sufficient to convince the AMS not to withdraw his endorsement. *Id.*

¶20     Under the harmful error doctrine, an agency's action is reversible only if the employee proves that the procedural error substantially prejudiced his rights by possibly affecting the agency's decision. *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 43 (2004). Harmful error cannot be presumed; the employee must show that the error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id.*; 5 C.F.R. § 1201.4(r). Here, the administrative judge found that, even if the agency committed procedural error as to its obligations to conduct a certain type of investigation, the appellant failed to establish that any such error was harmful. ID at 29. In particular, the administrative judge noted that the agency's Liaison to the AMS testified that the appellant's homily was "totally inappropriate regardless of whether the appellant had actually engaged in the activities he described." ID at 28; HCD (testimony of the Liaison).

¶21     On review, the appellant argues that the administrative judge erred because the lack of a proper investigation was a constitutional due process issue and not subject to the harmful error test and because, as he asserted below, an opportunity to explain his side of the story "may well have" changed the Liaison's decision to notify the AMS of the appellant's conduct or may have been sufficient to convince the AMS not to withdraw his ecclesiastical endorsement. PFR File, Tab 1 at 15-16. We find these contentions unavailing. As discussed above, the appellant had no property or liberty interest in his ecclesiastical endorsement,

and, therefore, the agency's failure to conduct an investigation prior to communicating with the AMS did not implicate any due process concerns. The appellant's argument on review that the agency's failure to conduct an investigation was harmful, contrary to the administrative judge's finding, represents mere disagreement with the administrative judge's well-reasoned conclusion and provides no basis to disturb the initial decision. *See Crosby*, 74 M.S.P.R. at 106. In any event, we agree with the administrative judge's determination that, even if the agency did commit a procedural error, the appellant has failed to show that such error was harmful.

The appellant failed to show that the administrative judge abused his discretion in denying the appellant's request to admit Exhibit Z.

¶22    During the hearing, the administrative judge denied the appellant's request to admit Exhibit Z, which he had not included in his prehearing submissions and had provided to the agency only several days before the hearing after finding it in a stack of papers in his possession. HCD (testimony of the appellant). On review, the appellant argues that the administrative judge erred in denying his request to submit this exhibit because "the handwriting is not easy to read at first glance and [the appellant] did not know what it was until he happened to study it in preparing for trial," and because the agency should have produced it during discovery but failed to do so. PFR File, Tab 1 at 23-24. He also avers that Exhibit Z is "highly relevant" and reflects that the Director felt "let down by [the Chief of Chaplain Services] in losing the opportunity to dismiss [the appellant] by previously failing to build a case of poor behavior against [the appellant]." *Id.*

¶23    An administrative judge has wide discretion to control the proceedings before him, including the authority to exclude evidence that he believes would be irrelevant, immaterial, or unduly repetitious. *See Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 10 (2010); 5 C.F.R. § 1201.41(b)(8). To obtain reversal of an initial decision on the ground that the administrative judge abused his discretion in excluding evidence, the petitioning party must show that

the administrative judge disallowed relevant evidence that could have affected the outcome of the appeal. *Sanders*, 114 M.S.P.R. 487, ¶ 10; *Jezouit v. Office of Personnel Management*, 97 M.S.P.R. 48, ¶ 12 (2004), *aff'd*, 121 F. App'x 865 (Fed. Cir. 2005). Here, the appellant has not shown that Exhibit Z is relevant to the dispositive issues in this appeal or that the inclusion of Exhibit Z in the record would have affected the outcome in any way. Therefore, the appellant has not shown that the administrative judge abused his considerable discretion in excluding Exhibit Z or that any such error denigrated his substantive rights. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

<u>The appellant has not shown that the administrative judge abused his discretion in denying the appellant's motion to compel testimony.</u>

¶24     Finally, the appellant argues that the administrative judge abused his discretion in denying his motion to compel deposition testimony from the agency's Liaison to the AMS concerning his communications with the AMS and with other agency employees about contacting the AMS regarding the appellant. PFR File, Tab 1 at 24; IAF, Tab 31. The administrative judge denied the motion, finding that the information apparently sought by the appellant—namely, information to support his claim that the agency employees conspired to convince the AMS to revoke his ecclesiastical endorsement—was beyond the scope of the Board's review in this case. IAF, Tab 32. On review, the appellant avers that "there is absolutely no rule or principle precluding the Agency from disclosing contacts between it and the [AMS]. Moreover, such information would have been obviously material to most of the issues in this case." PFR File, Tab 1 at 24.

¶25     An administrative judge has broad discretion in ruling on discovery matters, and the Board will not find reversible error in such rulings absent an abuse of discretion. *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016). Here, for the reasons discussed above, we agree with the administrative judge's

finding that the appellant's requested testimony—information pertaining to the reasons underlying the AMS's decision to withdraw his ecclesiastical endorsement—is beyond the scope of the Board's review. *See Kedroff*, 344 U.S. at 116; *Gargiulo*, 727 F.3d at 1185. Accordingly, the appellant has not shown that the administrative judge abused his discretion in denying the appellant's motion to compel such testimony.

## ORDER

¶26    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain

judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.