**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

DIANA Z. KAMMUNKUN,
　　　　　Appellant,

　　　v.

DEPARTMENT OF DEFENSE,
　　　　　Agency.

DOCKET NUMBER
SF-0752-17-0667-M-2

DATE: April 5, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Elbridge Z. Smith, Esquire, Renn C. Fowler, Esquire, and Gary M. Gilbert,
　Esquire, Silver Spring, Maryland, for the appellant.

Elbridge W. Smith, Esquire, Honolulu, Hawaii, for the appellant.

Loraine Kovach-Padden, Esquire, and Ryan L. Wischkaemper, Esquire,
　Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### FINAL ORDER

　　The appellant has filed a petition for review of the initial decision, which sustained her removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant filed this chapter 75 appeal, challenging her removal from service. *Kammunkun v. Department of Defense*, MSPB Docket No. SF-0752-17-0667-I-1, Initial Appeal File (IAF), Tab 1. She indicated in her initial appeal that she had filed a whistleblower reprisal complaint with the Office of Special Counsel (OSC) regarding matters arising before her removal. *Id.* The Board therefore docketed an individual right of action (IRA) appeal. *Kammunkun v. Department of Defense*, MSPB Docket No. SF-1221-17-0675-W-1, Initial Appeal File (0675 IAF), Tab 2. The appellant subsequently submitted evidence showing that she amended her OSC complaint to add an allegation that she was removed in reprisal for her whistleblowing. 0675 IAF, Tab 22. The administrative judge therefore joined the removal and IRA appeals. 0675 IAF, Tab 54.

The administrative judge held a hearing and issued a single initial decision in the joined appeals. 0675 IAF, Tab 68, Initial Decision. He found that the appellant was permitted to challenge her removal in a direct Board appeal or an OSC complaint, but not both, and that the appellant made a binding election to pursue the matter in an OSC complaint. *Id.* at 7-8. As a result, the administrative

judge addressed the merits in just the IRA appeal, concluding that the appellant was not entitled to corrective action regarding her removal or any other personnel action. *Id*. at 14-52. Among other things, he found that the agency's evidence in support of the appellant's removal was strong. *Id*. at 45-49; *see Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11 (2022) (identifying the strength of an agency's evidence in support of a personnel action as one factor relevant to its burden of proving that it would have taken the same personnel action in the absence of an employee's protected disclosures or activity).

The appellant challenged the initial decision before the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). Although the court affirmed regarding the appellant's IRA appeal, it remanded for further proceedings regarding the appellant's chapter 75 appeal. *Kammunkun v. Department of Defense*, 800 F. App'x 916, 917 (Fed. Cir. 2020). The court explained that the appellant, who was a supervisor, was not an "employee" subject to the relevant statutory and regulatory election of remedy requirements. *Id*.; *see Requena v. Department of Homeland Security*, 2022 MSPB 39, ¶¶ 7-8, 10-12 (acknowledging that the Federal Circuit's decision in *Kammunkun* properly determined that supervisors are not required to elect between filing a direct adverse action appeal with the Board or an OSC complaint followed by a Board appeal).

On remand from the Federal Circuit, the administrative judge held a new hearing and further developed the record.[2] *E.g.*, *Kammunkun v. Department of Defense*, MSPB Docket No. SF-0752-17-0667-M-2, Refiled Remand File (M-2 RF), Hearing Transcript. He then issued a remand initial decision that affirmed the appellant's removal. M-2 RF, Tab 9, Remand Initial Decision

---

[2] The administrative judge dismissed the remanded chapter 75 appeal without prejudice to accommodate scheduling delays, which resulted in two docket numbers for the one matter. *Kammunkun v. Department of Defense*, MSPB Docket No. SF-0752-17-0667-M-1, Remand File, Tab 55; *Kammunkun v. Department of Defense*, MSPB Docket No. SF-0752-17-0667-M-2, Refiled Remand File, Tab 1.

(RID). Among other things, this decision rejected the appellant's various claims of due process violations. RID at 69-86.

The appellant has filed a petition for review. *Kammunkun v. Department of Defense*, MSPB Docket No. SF-0752-17-0667-M-2, Petition for Review (PFR) File, Tab 1. In her petition, the appellant exclusively challenges just one aspect of the remand initial decision—the administrative judge's findings regarding due process requirements as they relate to an impartial deciding official. *Id*. at 4-26 (referencing RID at 74-85). The agency has filed a response, to which the appellant has replied. PFR File, Tabs 3-4.

## ANALYSIS

Before we turn to the appellant's discrete arguments about due process, the only matter she challenges on review,[3] we will provide a brief overview of the circumstances giving rise to her removal. The appellant held the position of Supervisory Records and Information Management Specialist for an entity that was previously known as the Joint POW/MIA Accounting Command but is more recently named the Defense POW/MIA Accounting Agency (DPAA). IAF, Tab 21 at 8, Tab 22 at 5. Over the course of a couple of years, the agency conducted multiple investigations, each of which found that the appellant and others repeatedly mishandled classified materials. The first was a 2015 investigation about the review and transfer of files to the National Personnel Records Center, a National Archives and Records Administration (NARA) facility in St. Louis, Missouri, that is not equipped to store classified materials. IAF, Tab 18 at 11-21, Tab 22 at 6-8. The second was a 2016 security inquiry about the improper alteration of classification markings. IAF, Tab 11 at 5-16, Tab 22 at 9. The third was a 2016 investigation about the transfer and review of more records to a different NARA facility that cannot store classified materials,

_____

[3] The appellant does not challenge the administrative judge's findings regarding the charges, nexus, and penalty. We have reviewed those findings and see no basis to disturb them.

this time in Riverside, California, along with subsequent actions of the appellant and others when they traveled to Riverside to review the records again. IAF, Tab 15 at 9-40, Tab 22 at 10-15. It was this third investigation, the one about Riverside, that led to the appellant's removal.

The appellant played a primary role in the initial review of records for the removal of classified material before their transfer to Riverside, in December 2015. *E.g.*, IAF, Tab 15 at 11, 55-56. She then led a trip to Riverside to review the records again, in June 2016, with the help of two contractors. *Id*. at 12, 46, 55. One of those contractors submitted a "statement for the record," dated July 2016, alleging that the appellant engaged in various improprieties during their Riverside trip. *Id*. at 46. Broadly speaking, she alleged that the appellant removed classified materials they found, improperly shredded them, replaced them with unclassified documents to fill the gaps, and then lied to agency officials about this while coaxing the contractors to do the same. *Id*.

In September 2016, the Acting Director of DPAA—who would later be the deciding official in the appellant's removal—initiated an investigation regarding these allegations. *Id*. at 43-46. She identified 10 specific matters for the investigator to consider. *Id*. at 43-44. The investigator did so and issued a December 2016 report about the same. *Id*. at 9-40. The Acting Director then reviewed the investigator's evidence and findings before creating a February 2017 memorandum of record, which described her own analysis of the situation. *Id*. at 5-8. This memorandum directed the Acting Chief of Staff—who would become the proposing official in the appellant's removal—to consider whether any DPAA employees should be subject to personnel actions. *Id*. at 7.

In March 2017, the Acting Chief of Staff proposed the appellant's removal for (1) lack of candor, (2) failure to carry out written or oral regulations, orders, rules, procedures, or instructions, (3) mishandling Government documents, and (4) misuse or abuse of contractor employees. IAF, Tab 16 at 5-10. Each stemmed from the Riverside matter. *Id*. at 5-7. After the appellant responded to

the charges, *e.g.*, IAF, Tab 19 at 4-18, the Acting Director, i.e., the deciding official, sustained all of the charges and the removal, IAF, Tab 21 at 9-28.[4]

The agency did not violate the appellant's due process rights.

The Acting Director's involvement in this case prior to her decision to remove the appellant forms the basis of the appellant's petition for review.  *E.g.*, PFR File, Tab 1 at 4-26.  The appellant's argument can be summarized as follows:  the Acting Director ordered the investigation about allegations that she crafted, she overrode the investigative report to make her own investigatory findings, and then she instructed another official to consider remedial actions, which led to the proposed removal that the Acting Director sustained.  *Id*.  According to the appellant, these circumstances are such that the Acting Director was not an impartial deciding official.  *Id*.

The administrative judge considered but rejected this argument below.  RID at 74-85.  Among other things, he found that the Acting Director credibly testified that she wrote the February 2017 memorandum because the prior report from the investigator could have been more succinct.  RID at 76.  He further found that the appellant was overstating the significance of any differences between the investigator's report and the Acting Director's memorandum.  RID at 76-77 (referencing IAF, Tab 15 at 5-8 (Acting Director's memorandum), 9-40 (investigator's report)).  The administrative judge also rejected the appellant's contention that the deciding official essentially required that the proposing official propose the removal before us, leaving her with no discretion in the matter.  RID at 78-85.

To establish a due process violation based on the identity of the deciding official, an employee must assert specific allegations indicating that the agency's choice of the deciding official made the risk of unfairness to the appellant

---

[4] The administrative judge found that the agency failed to prove specifications 1 and 3 of its fourth charge, RID at 63, 69, but proved all others for all the charges, RID at 51, 57, 59, 62, 68.

intolerably high. *Dieter v. Department of Veterans Affairs*, 2022 MSPB 32, ¶ 12; *Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 9 (2013). However, a deciding official's awareness of background information concerning the appellant, her concurrence in the desirability to take an adverse action, or her predisposition to impose a severe penalty does not disqualify her from serving as a deciding official on due process grounds. *Lange*, 119 M.S.P.R. 625, ¶ 9. Moreover, a deciding official's mere knowledge of an employee's background does not rise to the level of a due process violation unless "that knowledge is a basis for the deciding official's determinations on either the merits of the underlying charge or the penalty to be imposed." *Id*. (quoting *Norris v. Securities & Exchange Commission*, 675 F.3d 1349, 1354 (Fed. Cir. 2012)).

In *Dieter*, an appellant argued that the deciding official was biased for several reasons, including her involvement in an investigation that led to the loss of his ecclesiastical endorsement from an outside entity, which was a condition of his employment with the agency and formed the basis of his removal. *Dieter*, 2022 MSPB 32, ¶¶ 2-4, 13. The Board was not persuaded that these circumstances rose to the level of a due process violation. *Id*., ¶¶ 13-14.

In *Lange*, the Board similarly considered a deciding official's knowledge of and involvement in an appellant's pre-removal investigation. *Lange*, 119 M.S.P.R. 625, ¶ 10. The administrative judge cited several facts to find that the appellant was denied due process: the deciding official briefed the inspector general's office about the agency's investigation into the appellant's alleged misconduct, he added the appellant's supervisor as a subject of the investigation, he had the initial responsibility of screening additional allegations of misconduct that were not included in the appellant's proposed removal, and he had received a memorandum regarding the final investigatory report about the appellant's conduct. *Id*., ¶¶ 3-4, 10. The Board, however, disagreed with the administrative judge. The Board explained that none of those instances of involvement were

relied upon by the deciding official in considering the removal and, together, they did not illustrate an intolerably high risk of unfairness. *Id.*, ¶ 10.

Once again, it is the appellant's burden to establish actual bias or an intolerable risk of unfairness amounting to a due process violation. *Martinez v. Department of Veterans Affairs*, 119 M.S.P.R. 37, ¶ 10. The administrative judge found that the appellant failed to meet this burden, and we agree. RID at 74-85.

Although the appellant has cited several cases in her petition for review, none are particularly supportive of her position. For example, the appellant has referred us to a couple of cases in which the Board expressed concern about a deciding official's involvement in underlying charges. PFR File, Tab 1 at 11-12 (citing *Eichner v. U.S. Postal Service*, 83 M.S.P.R. 202 (1999); *House v. U.S. Postal Service*, 80 M.S.P.R. 138 (1998)). But the Board expressed this concern in terms of deciding the appropriate penalty. *Eichner*, 83 M.S.P.R. 202, ¶¶ 19-20; *House*, 80 M.S.P.R. 138, ¶¶ 14-15. The Board did not determine that the deciding officials' involvement violated employees' due process rights in those cases.

The appellant states that the Board erred in the *Eichner* case by treating the issue as concerning the penalty, rather than due process, and this "would not happen today, post-*Ward*, post-*Stone*." PFR File, Tab 1 at 12. Though she has not elaborated, it seems as if the appellant is referencing *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999). But those decisions establish that a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed. *E.g.*, *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 23. The appellant has not explained why *Ward* and *Stone* would require a different result in *Eichner* or this appeal, and we are aware of none. The crux of the appellant's argument seems to be that the deciding official knew too much about the circumstances surrounding

the appellant's misconduct, not that she knew and relied upon new and material information without the appellant's knowledge.

In another example, the appellant has referred us to a civil case in which a judge failed to recuse himself, even though the respondent party facing a $50 million lawsuit had recently contributed $3 million to the judge's election. PFR File, Tab 1 at 9 (referencing *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 872, 883-87 (2009)). There, the U.S. Supreme Court found that a judge violated a petitioner's due process rights when he failed to recuse himself from a case against a company whose chairman and principal officer had donated $3 million to the judge's campaign while the case was pending in the courts. *Caperton*, 556 U.S. at 872, 883-87. The Court reasoned that the facts were "extreme" and reflected a "serious, objective risk of actual bias." *Id.* at 886-87. That extreme set of facts, though, is unlike the circumstances of this appeal, in which the deciding official was merely more familiar with the investigation and charges against the appellant than the appellant may have preferred. Moreover, *Caperton* is distinguishable from the facts before us because that case involved the alleged bias of the judge, whereas this case involves an allegation of bias by the deciding official, whose decision to take an adverse action against the appellant for her alleged misconduct is subject to de novo review. *See Norris*, 675 F.3d at 1355-57 (recognizing that "the Board determines de novo the underlying facts of the case such as whether the employee engaged in the alleged misconduct and whether the agency exceeded its authority in determining that the employee's misconduct would adversely affect the efficiency of the service").

The appellant has also suggested that the administrative judge erred by crediting the testimony of the deciding official because the standard for bias is an objective one. PFR File, Tab 1 at 13-14. However, the administrative judge did not exclusively rely on the deciding official's testimony. He considered and relied upon all the surrounding circumstances while addressing the appellant's claim. RID at 74-85. To the extent that the administrative judge did consider and

rely upon the testimony of the deciding official, the appellant has not presented any persuasive reason for us to disturb the administrative judge's conclusion that the testimony was credible. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (providing that the Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).

The appellant has next described the deciding official as effectively changing the report of investigation in a number of ways, such that she should not have been involved in the proposed removal that followed. PFR File, Tab 1 at 16-24 (referencing IAF, Tab 15 at 5-8 (deciding official's summary of the investigatory report) 9-40 (full investigatory report)). For example, the appellant argues that the deciding official concluded that more than two classified documents were sent to the Riverside facility, when the report of investigation found the matter undetermined. PFR File, Tab 1 at 17 (referencing IAF, Tab 15 at 5, 21-23). In fact, the report of investigation concluded that it was impossible to prove whether relevant parties discovered more than 100 classified documents at the Riverside facility, as had been alleged, since the documents in question were destroyed, preventing a page-by-page analysis of their classification level. IAF, Tab 15 at 21, 43. But the report went on to discuss all the surrounding evidence, both evidence lending credence to the claim that the parties discovered some number of classified documents and other evidence suggesting the number was less than originally alleged. *Id*. at 21-23. The deciding official's subsequent memorandum indicated that the parties "discovered an unknown number, but more than two, classified documents" at Riverside. *Id*. at 5.

Other ways in which the appellant asserts that the deciding official effectively changed the report of investigation include conclusions about the appellant directing contractors to replace removed classified documents with

unclassified documents, PFR File, Tab 1 at 17-18, the appellant's role in the purchase and use of an unapproved commercial shredder, *id*. at 18-19, the appellant instructing contractor employees to state "if asked" that only two classified documents were found, which she "knew to be untrue," suggesting higher culpability, *id*. at 19-20, the appellant being one of two individuals who instructed the contractor employees to refer to the contracting officer's representative anyone who asked about the documents search, *id*. at 20-21, and the appellant creating in the mind of a contractor employee the perception that the appellant could end her job if she did not do what the appellant directed her to do, and conveying to contractor employees that they were to shield the appellant if she did something wrong, *id*. at 22-24. The appellant further argues that the deciding official made additional "gratuitous findings" that the appellant destroyed classified documents and made false statements about doing so. *Id*. at 24-25.

As previously noted, the administrative judge found that the appellant overstated the significance of any differences between the investigator's report and the memorandum of the individual who was both Acting Director and the deciding official. RID at 76-77. We agree. The deciding official's conclusions, as stated in her memorandum, are supported by the report of investigation. Turning back to the example described above to illustrate, the contractor that first alerted the agency of the improprieties surrounding the Riverside trip alleged that she and the others involved found around 100 classified documents, despite the appellant representing that they found only 2. IAF, Tab 15 at 46. The investigator concluded that this was "undetermined," because "[s]ubstantiating this allegation requires disproving a negative," which was "impossible" because the documents at issue were destroyed. *Id*. at 21. Nevertheless, the investigator went on to note that although the appellant was supposed to have removed all classified documents before they were sent to Riverside, the contractor's allegation was plausible, in part because the appellant's "prior incidents involving

the mishandling of classified information undermine any claims of [the appellant's] competence." *Id*. He further described why those who claimed to have found around 100 classified documents were more credible than the appellant and one other official who were also on the Riverside trip. *Id*. at 21-23. In her subsequent memorandum, the deciding official seems to have felt less bound by the absence of the now-destroyed documents. She stated that the parties found some unknown number of classified documents during the Riverside trip, more than the two alleged by the appellant, *id*. at 5, and we agree that the investigatory report supports that conclusion. To further illustrate, the appellant's next claim of the deciding official altering the investigatory report is even less convincing. PFR File, Tab 1 at 17-18. The investigatory report indicates that the appellant directed two others to search for classified documents, remove them, and manipulate those that remained to make it appear as if none had been removed. IAF, Tab 15 at 23. The subsequent memorandum of the deciding official concludes similarly. *Id*. at 5. In her petition, the appellant suggests that there is some meaningful distinction between the language of these two conclusions, but we find none. PFR File, Tab 1 at 17-18.

Broadly speaking, we recognize that the appellant has described the deciding official as having an extensive role in the investigation of the appellant's alleged misconduct. *E.g.*, *id*. at 15-16. We disagree, however, with the appellant's assertions about the resulting risk of unfairness. Once more, the Acting Director of DPAA—who would later be the deciding official in the appellant's removal—initiated an investigation after receiving specific allegations of wrongdoing. IAF, Tab 15 at 43-46. She identified 10 specific matters for the investigator to consider. *Id*. at 43-44. The investigator did so and issued a lengthy report about the same. *Id*. at 9-40. He enclosed hundreds of pages of evidence. IAF, Tabs 12-14, Tab 15 at 41-93. The Acting Director then reviewed the investigator's evidence and findings before creating a memorandum of record, which described her own analysis of the situation. IAF, Tab 15 at 5-8. This

memorandum ordered several remedial actions pertaining to classified materials and directed the Acting Chief of Staff—who would become the proposing official in the appellant's removal—to consider whether any DPAA employees should be subject to personnel actions. *Id*. at 7. Although the memorandum did conclude that allegations of wrongdoing on the part of the appellant and others were substantiated, it did not order the proposing official to initiate any particular adverse action for any employee. To the contrary, the proposing official testified that it was up to him to determine what, if any, discipline should be proposed, and the administrative judge found that testimony credible. RID at 80-84. Even assuming the deciding official influenced the proposing official's actions, we discern no error. The same individual may act as the proposing and deciding official in a chapter 75 proceeding. *Hidalgo v. Department of Justice*, 93 M.S.P.R. 645, ¶ 16 (2003). These are not circumstances in which the agency's choice of the deciding official made the risk of unfairness to the appellant intolerably high. Accordingly, we affirm the initial decision.

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012.**  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.