**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ROBERT L. CORDOVA,
           Appellant,

     v.

DEPARTMENT OF JUSTICE,
           Agency.

DOCKET NUMBER
DE-0752-21-0154-I-3

DATE:  November 13, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Casey J. Leier</u>, Esquire, Denver, Colorado, for the appellant.

<u>Lynn Stoppy</u>, Esquire, and <u>Adam W. Boyer</u>, Kansas City, Kansas,
    for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### FINAL ORDER

¶1     The agency has filed a petition for review and the appellant has filed a cross petition for review of the initial decision in this removal appeal, which sustained the charge of discreditable behavior, found that the appellant failed to prove his affirmative defenses, and mitigated the removal penalty to a 21-day suspension. For the reasons discussed below, we DENY the petition for review and cross

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

petition for review.[2] We AFFIRM the initial decision except as expressly MODIFIED as to the administrative judge's analyses of the appellant's First Amendment, due process, and discrimination claims, as well as the penalty. Nevertheless, the administrative judge's mitigation of the removal action to a 21-day suspension is AFFIRMED.

## BACKGROUND

¶2 The agency's Bureau of Prisons (BOP) employed the appellant as a GS-11 Supervisory Correctional Officer at the Federal Correctional Complex (FCC) in Florence, Colorado. *Cordova v. Department of Justice*, MSPB Docket No. DE-0752-21-0154-I-1, Initial Appeal File (IAF), Tab 13 at 12. He also worked as a Special Investigative Service (SIS) Lieutenant, and in that capacity, he was tasked with validating prisoners' gang affiliations and regularly received training about criminal gang activity inside and outside of the prison. *Cordova v. Department of Justice*, MSPB Docket No. DE-0752-21-0154-I-2, Appeal File (I-2 AF), February 23, 2022 Hearing Transcript (HT 1) at 10-11 (testimony of a Special Investigative Agent). The agency has identified the Bandidos Motorcycle Club (the Bandidos) as a group that conducts criminal activity both within and outside of prisons. *Id.* at 10-11, 18 (testimony of the Special Investigative Agent); I-2 AF, February 24, 2022 Hearing Transcript (HT 2) at 10-11 (testimony of the deciding official). As such, the agency considered the Bandidos a Security Threat Group (STG). HT 1 at 10-11, 18-20 (testimony of the Special Investigative Agent).

¶3 On January 4, 2021, the agency proposed the appellant's removal based on a charge of discreditable behavior. IAF, Tab 13 at 28-31. In support of its charge, the agency alleged that it discovered YouTube videos posted by the appellant in which he was photographed posing with members of the Bandidos. *Id.* at 28-30.

---

[2] At the time of the appellant's filing of his pleadings on review, the Board's regulation expressly allowed a party to file a cross petition for review. 5 C.F.R. § 1201.114 (2023). The Board revised this regulation, effective October 7, 2024, removing references to a cross petition for review but still allowing both parties to file a petition for review. 5 C.F.R. § 1201.114.

The appellant provided both an oral and a written response to the proposal, in which he acknowledged that he had been photographed with individuals who had been identified as Bandidos members. *Id.* at 20-24. However, he explained that the photographs were taken as part of an annual charitable motorcycle run that he had set up to memorialize his stepson, who was tragically murdered in 2015 by a gang member in a case of mistaken identity. *Id.* at 20-24, 39. The motorcycle run was held between 2017 and 2019 and raised money for scholarships. *Id.* at 39. The appellant acknowledged that he was aware that some Bandidos members attended the events, which were open to the public, but he denied that he knowingly associated with individuals engaging in criminal activity or that he engaged in or endorsed criminal activity. *Id.* at 23-24. After considering the appellant's replies, the deciding official issued a decision letter sustaining the charge and the removal penalty. *Id.* at 16-19.

¶4    The appellant timely filed a Board appeal challenging his removal. IAF, Tab 1. After holding the appellant's requested hearing, I-2 AF, Tabs 42, 46, 48, the administrative judge issued an initial decision that sustained the charge of discreditable behavior and found a nexus between the charge and the efficiency of the service, but mitigated the removal penalty to a 21-day suspension as the maximum reasonable penalty, *Cordova v. Department of Justice*, MSPB Docket No. DE-0752-21-0154-I-3, Appeal File (I-3 AF), Tab 26, Initial Decision (ID) at 1-2, 8-12, 17-25. The administrative judge also concluded that the appellant failed to establish any of his affirmative defenses. ID at 12-17.

¶5    The agency has filed a petition for review of the initial decision, arguing that the administrative judge erred by mitigating the removal penalty. Petition for Review (PFR) File, Tab 1. The appellant has filed a response to the petition for review and a cross petition for review. PFR File, Tabs 5-6. In his cross petition for review, the appellant argues that the agency did not prove its charge, reasserts his affirmative defenses that the agency violated his rights under the First Amendment and his right to due process and discriminated against him based on

race, disagrees with the administrative judge's conclusion that the agency proved a nexus between his misconduct and the efficiency of the service, and alleges that the administrative judge made erroneous rulings on discovery and witnesses. PFR File, Tab 5. The agency has responded to the appellant's cross petition for review. PFR File, Tab 8.[3]

## DISCUSSION OF ARGUMENTS ON REVIEW

We deny the appellant's cross petition for review.

*The administrative judge correctly sustained the charge.*

¶6        In his cross petition for review, the appellant asserts that the administrative judge erred by finding that the agency met its burden of proving the discreditable behavior charge and argues that the photographs he posted with Bandidos members were improperly taken out of context and there was no evidence that anyone perceived the agency in a negative light or that the agency suffered any adverse effects due to the alleged misconduct. PFR File, Tab 5 at 10-12. We are not persuaded. The Board has not required that an agency identify negative publicity as an element of the charge of discreditable conduct, and we decline to add such an element here. *See Faitel v. Veterans Administration*, 26 M.S.P.R. 465, 469-70 (1985) (referencing the perceptions of a witness that he believed the appellant was kidding when the appellant made the alleged offending statement in affirming an administrative judge's finding that an agency did not prove that the statement discredited the appellant or the agency); *Ott v. Department of the Army*,

---

[3] The administrative judge ordered the agency to provide interim relief as of the date of the issuance of the initial decision. ID at 26-27. With its petition for review, the agency submitted a certification of its compliance with the interim relief order along with evidence that it returned the appellant to duty effective January 15, 2023. Petition for Review File (PFR), Tab 1 at 1, 19-21; *see* 5 C.F.R. § 1201.116(a). In response, the appellant questions whether the agency has fully complied with its interim relief obligation. PFR File, Tab 6 at 4. Because we deny the agency's petition for review and affirm the initial decision, the issue of the agency's compliance with the interim relief order is now moot. Any issue of compliance with the Board's final order may be raised to the regional office in accordance with 5 C.F.R. § 1201.181.

20 M.S.P.R. 90, 91-92 (concluding, without discussing whether the conduct resulted in notoriety, that removal was an appropriate penalty for the charges of failure to follow instructions and bringing discredit on the agency based upon an appellant's unauthorized representations to a volunteer that the agency would pay her), *aff'd*, 758 F.2d 667 (Fed. Cir. 1984) (Table).

¶7    As the administrative judge correctly observed, like a charge of "conduct unbecoming," a charge of "discreditable behavior" is a general charge and has no specific elements of proof; it is established by proving that the appellant committed the acts alleged in support of the broad label.  ID at 9; *see Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010) (concluding that a charge of "conduct unbecoming" has no specific elements of proof; it is established by proving that the employee committed the acts alleged in support of the broad label).  The agency's Standards of Employee Conduct do not explicitly define the word "discredit;" however, they state that employees are required to "[c]onduct themselves in a manner that fosters respect for the [BOP]."  IAF, Tab 16 at 49-68.  Consistent with this expectation, the common meaning of "discreditable" is "injurious to reputation" or "disgraceful."  Merriam-Webster's Collegiate Dictionary 331 (10th ed. 2002).  Consistent with this definition, the administrative judge concluded that the appellant's conduct created a perception among agency officials that he had been compromised.  ID at 9-11.  For the reasons discussed below, we agree.

¶8    The appellant does not dispute that, as alleged by the agency, he posted a YouTube video that contained photographs in which he posed with members of the Bandidos.  PFR File, Tab 5 at 7.  He also does not disagree with the administrative judge's conclusion that he was aware that he posted photos of himself with Bandidos members and that the Bandidos was on the agency's STG list.  ID at 9-10.  His argument is that his actions were not discreditable because the photos were among others included in the video that did not have Bandidos

members and the agency failed to produce evidence that there was any damage to its reputation. PFR File, Tab 5 at 10-11; IAF, Tab 13 at 46-56.

¶9 The appellant's claim is belied by the fact that the agency began investigating his misconduct after it received an anonymous envelope that contained the photos. HT 1 at 18 (testimony of the Special Investigative Agent); IAF, Tab 13 at 46-56. The employee who received the photos recognized that they included members of the Bandidos. HT 1 at 18-20 (testimony of the Special Investigative Agent). He reported the pictures to wardens at two BOP institutions, and one of the wardens referred the matter to the agency's Office of Internal Affairs (OIA). *Id.* at 20-22, 28-29 (testimony of the Special Investigative Agent). This chain of events supports the conclusion that an anonymous individual within or outside the BOP felt that the appellant's conduct called the BOP's reputation into question and that, once known to the agency, it also viewed the appellant's conduct as potentially damaging. Therefore, we decline to disturb the administrative judge's finding that the appellant brought discredit to the agency by posting pictures of himself with members of the Bandidos.

*The agency did not violate the appellant's First Amendment rights.*

¶10 On review, the appellant reargues that the agency's decision to discipline him for his wholly off-duty actions infringed on his First Amendment freedoms of speech, association, and religion. PFR File, Tab 5 at 12-17. The administrative judge thoroughly considered the appellant's arguments regarding his freedom of speech and association rights, acknowledging that the Supreme Court has recognized that public employees, like the appellant, enjoy constitutionally protected interests in these freedoms, *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), but that those rights must be balanced against "the employer's interest in maintaining an efficient workplace," ID at 11 (quoting *Shahar v. Bowers*, 114 F.3d 1097, 1112 (11th Cir. 1997) (en banc) (Tjoflat, J., concurring)); *see Smith v. Department of Transportation*, 106 M.S.P.R. 59, ¶ 46 (2007). In addressing the issue of whether

employee speech is protected by the First Amendment, the Board must determine (1) whether the speech addressed a matter of public concern and, if so, (2) whether the agency's interest in promoting the efficiency of the service outweighs the employee's interest as a citizen. *Smith*, 106 M.S.P.R. 59, ¶ 46.

¶11 The administrative judge implicitly found that the appellant's speech addressed a matter of public concern. ID at 11. We discern no reason to disturb this implicit finding, which the parties do not dispute on review. After applying the balancing test set forth by the Supreme Court in *Pickering*, the administrative judge determined that the agency's interest in preventing its officers from creating the impression that they might be compromised by criminal entities significantly outweighed "the appellant's interest in his relationships with members of the Bandidos." ID at 11-12; *see Smith*, 106 M.S.P.R. 59, ¶¶ 45-49 (applying the Supreme Court's *Pickering* balancing test to the appellant's First Amendment claim).

¶12 The appellant argues that his free speech and association interests more broadly included his pursuit of charitable fundraising. PFR File, Tab 5 at 15-16. As he observes, "charitable appeals for funds . . . involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Id.* (quoting *Village of Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980)). Here, the appellant posted the videos containing the photographs at issue to promote a motorcycle run. IAF, Tab 13 at 40. That run, in turn, was to honor his stepson and "raise money for scholarship programs so that young people can pursue educational opportunities and break the cycle of poverty and being underprivileged." *Id.* at 21-22, 40; I-2 AF, February 28, 2022 Hearing Transcript (HT 3) at 84-85 (testimony of the appellant). The agency has not disputed that the appellant's purpose was, at least in part, charitable in nature. PFR File, Tab 8 at 5-6. Therefore, to the extent that the administrative judge suggested that the appellant's interest as a citizen was

limited to associating with Bandidos members, we modify the initial decision to recognize his broader charitable interests and desire to honor his stepson. [4]

¶13    Nonetheless, we are not convinced that these private interests outweigh those of the Government.  The Government's interests include "whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."  *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering*, 391 U.S. at 570-73).  A law enforcement officer's First Amendment rights are much narrower than those of other kinds of public employees.  *Chambers v. Department of the Interior*, 103 M.S.P.R. 375, ¶ 37 (2006) (citing, among other cases, *O'Donnell v. Barry*, 148 F.3d 1126, 1135 (D.C. Cir. 1998) ("because of the special degree of trust and discipline required in a police force there may be a stronger governmental interest in regulating the speech of police officers than in regulating the speech of other governmental employees")), *aff'd in part, vacated and remanded in part on other grounds*, 515 F.3d 1362 (Fed. Cir. 2008).  The First Amendment rights of a supervisory law enforcement officer are even more limited than the narrow rights of rank-and-file officers.  *Id.* (citations omitted); *see Brown v. Department of Transportation*, 735 F.2d 543, 547-48 (Fed. Cir. 1984) (considering a public employee's supervisory position as weighing in favor of the agency's interests under *Pickering*).  The reason for allowing greater restraints on the speech of law enforcement officers than on other kinds of public employees is that law enforcement work requires a high degree of discipline and harmony among officers; confidentiality; protection of close working relationships that require loyalty and confidence; minimal disruption to the public safety mission; and

---

[4] To the extent that the appellant generally states on review that his videos were "anti-gang," he has not pointed to any evidence that he raised this argument below or that it is based on new evidence that was not previously available.  PFR File, Tab 5 at 16. Therefore, we have not considered this argument further.

fostering uniformity and esprit de corps. *Chambers*, 103 M.S.P.R. 375, ¶ 37 (citations omitted); *see, e.g.*, *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000) ("In a law enforcement agency, there is a heightened need for order, loyalty, morale and harmony, which affords a police department more latitude in responding to the speech of its officers than other government employers") (citations omitted).[5]

¶14      The appellant was a Lieutenant in SIS, a department within the BOP responsible for identifying prisoners' affiliations with STGs and providing annual training to BOP staff on STGs. HT 1 at 12-13 (testimony of the Special Investigative Agent); HT 2 at 10-11, 31 (testimony of the deciding official). As an SIS Lieutenant, the appellant held a "prominent position" and "served as a liaison between the Agency and outside law enforcement" on gang activity. HT 2 at 31 (testimony of the deciding official). In removing the appellant, the deciding official observed that the appellant was "a federal law enforcement officer . . . responsible for supervising, protecting and caring for staff and the inmate population, and maintaining and enhancing the security of the institution." IAF, Tab 13 at 17. She also expressed concern that the appellant had lost the "confidence" of his superiors and that his public posting of photos of himself with Bandidos members could "negatively impact" the agency's reputation. *Id.* In sum, the appellant's posting of photographs with the members of an STG was antithetical to the agency's mission and his specific duties, undermined him as a supervisor and law enforcement officer, and ultimately posed a risk to the safety of inmates and staff. While we acknowledge the validity of the appellant's interests in honoring his stepson and raising money for scholarships, we find that those interests are outweighed by the agency's interests in the security of inmates and staff.

---

[5] Because we are persuaded by the reasoning in *Oladeinde*, we rely on that decision here. *See Moncada v. Executive Office of the President, Office of Administration*, 2022 MSPB 25, ¶ 17 n.6.

¶15    The appellant also argues that the agency's restriction on his freedom of association was overly broad because it punished him for "guilt by association" despite his lack of support for the Bandidos. PFR File, Tab 5 at 13-14; I-2 AF, Tab 51 at 18. The Government may not punish employees "who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities." *Elfbrandt v. Russell*, 384 U.S. 11, 17-19 (1966). Restrictions on joining organizations must be "narrowly drawn" by requiring "'specific intent' to further the illegal aims of the organization." *Id.* at 18-19 (citation omitted).

¶16    We are not convinced. The reasoning in *Elfbrandt* does not apply here because the agency did not punish the appellant for being a member of the Bandidos. In the proposed removal, the agency recognized that "it is reasonable and not unusual that while attending events such as . . . . memorial rides for fundraising events . . . that photos will be taken." IAF, Tab 13 at 29. However, it faulted the appellant for posing for photos with Bandidos members and posting those photos "to advertise for [his] fundraising events." *Id.* at 28-29. Because he was not punished for membership, the appellant's argument that other employees were also improperly punished for associational activity is not material to his freedom of association claim. PFR File, Tab 5 at 14-15.

¶17    Regarding the appellant's argument that the agency violated his First Amendment religious free exercise rights by taking the challenged action, the administrative judge did not analyze this argument, and so we take the opportunity to do so here.[6] We modify the initial decision to incorporate our analysis of this claim.

¶18    The appellant argued below and reargues on review that as a devout Catholic, the tenets of his religious beliefs require that he exercise forgiveness and not condemn or judge others, and that these religious beliefs required him to

---

[6] Although the appellant withdrew his affirmative defense of religious discrimination, I-2 AF, Tab 51 at 20, his argument that the agency's actions violated his right to free exercise of his religion is a distinct argument.

show acceptance toward gang members and potential criminals and to not exclude them, including by permitting them to take part in the annual charity events. I-2 AF, Tab 22 at 5, Tab 51 at 5, 24; HT 3 at 6, 36-37 (testimony of the appellant).

¶19　　The appellant also cites the recent decision in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), in which the Supreme Court held that a school district's decision to suspend a public high school football coach for refusing to cease offering a midfield prayer at the end of each game violated his religious free exercise rights under the First Amendment. I-3 AF, Tab 13; PFR File, Tab 5 at 12-17. The appellant argues that *Kennedy* stands for the proposition that, in order to burden an employee's sincerely held religious beliefs, the Government must satisfy "strict scrutiny" by showing that its chosen course of action was justified by a compelling government interest and was narrowly tailored in pursuit of that interest. *Kennedy*, 597 U.S. at 525 (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). The appellant argues that because he was photographed with the Bandidos members in pursuit of his religious beliefs of acceptance and forgiveness and because the agency could have taken a less restrictive action than removing him, such as by requiring that he put a disclaimer on the videos denouncing any association to the agency, the agency's removal action failed to satisfy the stringent requirements of strict scrutiny and must be reversed. PFR File, Tab 5 at 16-17.

¶20　　The appellant's argument relies on a fundamental misinterpretation of the court's free exercise jurisprudence. As set forth in *Kennedy*, under the Court's free exercise precedent, to trigger strict scrutiny, the appellant must first show that the Government burdened his religious practices pursuant to a policy that is not "neutral" or "generally applicable." *Kennedy*, 597 U.S. at 525-27; *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-89 (1990), *superseded by statute on other grounds as recognized by Ramirez v. Collier*, 595 U.S. 411 (2022). Unlike in *Kennedy*, in

which the Court determined that the government's policies were at least in part directed at restricting the employee's religious practices, here, the appellant has not alleged and there is no evidence in the record suggesting that the agency's policy was not "neutral" or "generally applicable," or was directed at his religious practices in any way. *Kennedy*, 597 U.S. at 526-27. Accordingly, the appellant's reliance on *Kennedy* is misplaced.

¶21 The proposing official recommended removal on the basis that the appellant violated the provision of the Standards of Employee Conduct cited above. IAF, Tab 13 at 29. That provision required that employees avoid discrediting the BOP. IAF, Tab 13 at 29, Tab 16 at 53. Because this standard is neutral and generally applicable, "rational basis" review applies, under which the appellant's free exercise claim will fail if the Government can demonstrate that its rule is rationally related to a legitimate government purpose. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1238 (9th Cir. 2020);[7] *Puglisi v. United States*, 564 F.2d 403, 409 (Ct. Cl. 1977). As the administrative judge correctly concluded in analyzing the appellant's freedom of speech and freedom of association claims, the agency has a legitimate interest in preventing its officers from creating the impression that they might be compromised by criminal entities, and the appellant has not offered any evidence or argument to the contrary. ID at 11-12. Based on the foregoing, we conclude that the administrative judge properly sustained the charge of discreditable behavior.

*The agency did not violate the appellant's due process rights.*

¶22 The appellant also argues in his cross petition for review that the administrative judge erred by denying his due process affirmative defense. PFR File, Tab 5 at 20-21. Specifically, the appellant argues that in sustaining the discreditable conduct charge, the deciding official received and considered

---

[7] While decisions of the U.S. Court of Appeals for Federal Circuit are controlling authority for the Board, other circuit courts' decisions are considered persuasive, but not controlling, authority. *Moncada*, 2022 MSPB 25, ¶ 17 n.6. We are persuaded by the reasoning in Parents for Privacy.

photographs and materials that were not included in the appellant's YouTube videos. *Id.* He asserts that these additional materials were prejudicial and intended to improperly influence the deciding official, constituting a due process violation. *Id.* The appellant also argues that the administrative judge erred by crediting the deciding official's testimony that, although she received a copy of a report prepared by the agency's OIA investigating the appellant's potential misconduct that was not included in the materials provided to the appellant, she did not read the report or consider it as part of the removal decision. *Id.* at 21; ID at 14.

¶23    As to the appellant's argument that the deciding official considered images that the appellant did not post, the appellant raised this argument below. PFR File, Tab 5 at 8, 20-21; I-2 AF, Tab 51 at 11-12; I-3 AF, Tab 21 at 15. Because the administrative judge did not address this argument, we do so here. We discern no due process error.

¶24    Due process requires that an agency provide an appellant with an explanation of its evidence before making its removal decision. *Rawls v. U.S. Postal Service*, 94 M.S.P.R. 614, ¶ 20 (2003) (citing *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (stating that the "pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story") (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545-46 (1985) (citation omitted))), *aff'd per curiam*, 129 F. App'x 628 (Fed. Cir. 2005). This requirement is met when the proposed removal provides the appellant with the specific facts and circumstances underlying the charge against him and he has an opportunity to make a meaningful response. *Chin v. Department of Defense*, 2022 MSPB 34, ¶ 19; *see Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶¶ 12-13 (2016) (concluding that due process requirements were met when the agency provided the appellant with notice of the charges

underlying his indefinite suspension, an explanation, access to the evidence the deciding official would consider, and an opportunity to respond).

¶25    The agency provided the four images in question to the appellant and the deciding official with the proposal notice. IAF, Tab 13 at 25-26, Tab 16 at 9-12; HT 1 at 26-27, 63-66 (testimony of the Special Investigative Agent); HT 2 at 16, 19 (testimony of the deciding official). From their content, it is evident that they are stock images of Mexican Mafia and Los Sureños gang symbols and tattoos rather than images related to the appellant's specific activities. IAF, Tab 16 at 9-12; HT 1 at 63-67 (testimony of a Special Investigative Agent). The deciding official's testimony reflects that she understood a set of 18 images, which included these four images, were from the appellant's online postings. HT 2 at 16, 19, 80-82 (testimony of the deciding official). However, the appellant's attorney did not question the deciding official specifically about the four images in question. Therefore, it is unclear if her general understanding of where the images came from included those four.

¶26    Neither the proposed removal nor the removal decision alleged that the appellant participated in gang activity, was a member of a gang, or was associated with the Mexican Mafia or Los Sureños. IAF, Tab 13 at 16-19, 28-30. Even assuming the deciding official mistakenly believed the four images were posted by the appellant, the proposed removal and removal decision did not rely on or cite to activity reflected in these images. IAF, Tab 13 at 16-19, 28-30. Nor did the appellant elicit any testimony from the deciding official suggesting she considered them to be material to her decision, which specified that the appellant posted images with members of the Bandidos. *Id.* Thus, we are not persuaded that the appellant was unable to respond to these images or that the deciding official weighed that without notifying the appellant of their significance.

¶27    Similarly, to the extent that the appellant argues that these materials were provided to the deciding official in error, he has not shown that any error substantially prejudiced his rights such that the outcome was probably affected.

*See Chin*, 2022 MSPB 34, ¶ 18 (observing that it is the appellant's burden to prove that a procedural error occurred and that the error substantially prejudiced his rights such that the outcome was probably affected). We modify the initial decision to find that the agency did not violate the appellant's due process rights or commit harmful error by providing the four images in question to the deciding official.

¶28     In connection with his second due process argument, the appellant asserts that the deciding official relied on an OIA report that the agency did not provide to him until after he was removed. PFR File, Tab 5 at 21; I-2 AF, Tab 51 at 20-21. We discern no error in the administrative judge's decision to credit the deciding official's testimony stating that although she received the OIA report by email, she did not read it or rely on it in making the removal decision. ID at 14.

¶29     A deciding official violates an employee's due process rights when she relies upon new and material ex parte information as a basis for her decisions on the merits of a proposed charge or the penalty to be imposed. *Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 8 (2013) (citing *Norris v. Securities and Exchange Commission*, 675 F.3d 1349, 1353-54 (Fed. Cir. 2012) ("A deciding official's knowledge of an employee's background only raises due process or procedural concerns where that knowledge is a basis for the deciding official's determinations on either the merits of the underlying charge or the penalty to be imposed") (citing *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (Fed. Cir. 2011))). The requirements of due process are triggered when the deciding official actually considers this information without notifying the employee. *Lange*, 119 M.S.P.R. 625, ¶¶ 11, 15. When a deciding official knows or is aware of the information but does not consider it, the employee's due process rights are not implicated. *Id.*

¶30     The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such

determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Even if an administrative judge does not discuss a witness's demeanor, the Board must defer to her findings when they are "necessarily intertwined with issues of credibility and an analysis of [a witness's] demeanor at trial." *See Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016) (holding that the Board erred in failing to defer to an administrative judge's determination that a petitioner had rehabilitative potential when the administrative judge's finding was based "at least in part" on the petitioner's hearing testimony that he had participated in treatment for the substance abuse that led to his unexcused absences without relapse and that he cared about his job).

¶31    In crediting the deciding official's testimony on this point, the administrative judge made specific credibility findings, relying on the Board's decision in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). Although she did not expressly discuss the deciding official's demeanor, the administrative judge's decision to credit her testimony was intertwined with her determination that the deciding official did not violate the appellant's due process rights because she did not consider the OIA report. ID at 13-14. Accordingly, we conclude that the administrative judge did not err by denying the appellant's due process affirmative defense.[8]

> *We agree with the administrative judge that the appellant failed to prove his Title VII discrimination affirmative defenses, but we clarify the basis for that finding.*

¶32    In his cross petition for review, the appellant argues that the administrative judge erred in finding that the appellant did not prove his race and national origin

---

[8] The appellant does not challenge the administrative judge's determination that the deciding official's receipt of the OIA report was not harmful error, and we discern no basis to disturb that finding. ID at 14.

discrimination claims.  PFR File, Tab 5 at 17-19.  We affirm the administrative judge's determination as modified here.[9]  ID at 14-17.

¶33    An appellant may prove discrimination based on evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as "convincing mosaic."  *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 24 (quoting *Troupe v. May Department Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).  The appellant argues that he proved discrimination based on what he identifies as the deciding official's "incompetence" and "irregularities."  PFR File, Tab 5 at 18-19.  He provides a number of examples, such as the deciding

---

[9] The administrative judge appears to have applied a burden-shifting analysis to the appellant's discrimination claim.  ID at 14-17.  However, she did not identify any facts that gave rise to an inference of discrimination, and she determined that the appellant did not prove that the deciding official was "motivated by a discriminatory animus."  *Id.* at 16-17.  To the extent that the administrative judge suggested otherwise, we clarify that her factual findings amount to a determination that the appellant did not prove that his race or national original were motivating factors in his removal.  *See Wilson v. Small Business Administration*, 2024 MSPB 3, ¶¶ 13-14, 16-17 (explaining that in order to prove that discrimination was the but-for cause of an agency's action using the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), an employee must first present at least some circumstantial evidence of discrimination); *see Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).  The appellant alleged discrimination based on race and national origin.  I-2 AF, Tab 22 at 5, Tab 51 at 19-20.  Although he generally reasserts his national origin discrimination claim on review, he provides no specific arguments concerning the merits of that claim.  PFR File, Tab 5 at 17-19.  Except as clarified here, we discern no basis to disturb the administrative judge's finding that the appellant failed to prove national origin discrimination.  To the extent that the administrative judge identified the appellant's national origin discrimination claim as one of "ethnic origin" discrimination in the initial decision, ID at 14, we find that her description of the appellant's claim did not impact the outcome, *see* Equal Employment Opportunity Commission Compliance Manual, § 2IIA1b, 2009 WL 2966754 (Aug. 6, 2009) ("National origin discrimination includes discrimination based on place of origin or on the physical, cultural, or linguistic characteristics of a national origin group.").  She elsewhere properly characterized the appellant's national origin discrimination claim.  *E.g.*, I-2 AF, Tab 25 at 1.  The parties have not challenged her characterization of the appellant's discrimination claims on review.

official's failure to ask the appellant certain questions when he responded to the proposed removal, failure to consult with others, and failure review or provide the OIA report. *Id.* He similarly argued below that the deciding official's "subjective decision making is highly suspicious." I-2 AF, Tab 51 at 19-20. The administrative judge did not directly address this argument, but we discern no error. We cannot infer discriminatory intent from what appears to be an alleged lack of diligence by the deciding official or subjective perception of unfairness in the agency's process of reaching its removal decision when the alleged facts reflect no racial bias.

¶34     One method by which an appellant may establish discrimination under Title VII is evidence relating to the treatment of similarly situated employees. *Pridgen*, 2022 MSPB 31, ¶¶ 24, 27. However, this method of proof requires the appellant to prove that others outside his protected groups were treated better. *Id.*, ¶ 24. The administrative judge found that the appellant's only valid comparator for his disparate treatment claim was BOP Lieutenant J.M., but that J.M. was also Hispanic, and therefore the appellant failed to show disparate treatment. ID at 16; I-2 AF, Tab 31 at 190. The administrative concluded that another alleged comparator, BOP Deputy Captain J.N., was not similarly situated to the appellant. ID at 16 (citing I-2 AF, Tab 51 at 17).

¶35     J.M. was pictured in a photograph with a Bandidos member that the appellant posted online. HT 2 at 125 (testimony of J.M.); PFR File, Tab 5 at 7. The agency initially proposed J.M.'s removal for discreditable behavior for posing for the photograph. I-2 AF, Tab 31 at 190-91. The deciding official reduced the penalty to a 21-day suspension. *Id.* at 192-95. The agency proposed J.N.'s removal for Conduct Unbecoming a Management Official based on his past membership in a motorcycle club that was associated with "a criminal gang." *Id.* at 184-86. The deciding official in his case reduced the penalty to a 10-day suspension. *Id.* at 187-89. The proposing and deciding officials in each instance were different for the appellant, J.M., and J.N. I-2 AF, Tab 31 at 186, 189, 191,

195. Like the appellant, both J.M. and J.N. identify as Hispanic. HT 2 at 107 (testimony of employee J.M.); HT 1 at 161 (testimony of employee J.N.). Without more, the appellant has raised no inference of discrimination based on the agency's treatment of other members of the same protected class. Further, as the administrative judge concluded, J.N. is not a valid comparator. In addition to J.N.'s conduct and supervisory chain differing from those of the appellant, J.N. also worked in a different facility and held a different position than the appellant. *Id.* at 160-61 (testimony of J.N.); IAF, Tab 13 at 12, 28.

¶36 On review, the appellant argues that the fact that colleagues J.M. and J.N. were disciplined is evidence that the agency targeted Hispanic employees. PFR File, Tab 5 at 17-18. The appellant similarly argued below that only "Hispanic employees," i.e., J.M., J.N., and himself, were disciplined for "being pictured with some outlaw motorcycle person or person affiliated with an outlaw motorcycle club." I-2 AF, Tab 51 at 17. To the extent that the administrative judge did not address this argument, we modify the initial decision to do so here.

¶37 An appellant who lacks evidence of discriminatory intent may nonetheless prove discrimination under a disparate impact theory. *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 645-56 (1989), *superseded by statute on other grounds as stated in Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). To establish a prima facie case of a disparate impact, an employee must: (1) identify the specific employment practices that are allegedly responsible for any observed statistical disparities; and (2) offer statistical evidence of a kind and degree showing the practices at issue have caused the disparate impact. *Warner v. Department of the Interior*, 115 M.S.P.R. 281, ¶ 8 (2010); *Stern v. Federal Trade Commission*, 46 M.S.P.R. 328, 333 (1990); *Tien E. v. Department of Veterans Affairs*, EEOC Appeal No. 2023001451, 2024 WL 1461081, at *4 (Mar. 21, 2024) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)).

¶38    The appellant argued below that "being pictured with some outlaw motorcycle person or person affiliated with an outlaw motorcycle club is something brand new and appears to have been directed only at Hispanic employees." I-2 AF, Tab 51 at 17. For purposes of our analysis here, we assume that the appellant has identified a "practice" of disciplining employees for affiliation to an STG or criminal gang. An appellant seeking to prove a disparate impact claim "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused [the discipline of individuals] because of their membership in a protected group." *Watson*, 487 U.S. at 994. Here, the appellant has not provided any background data, such as the number of employees who engaged in this misconduct, from which to determine that discrimination might be the motive for his, J.M.'s, and J.N.'s discipline. Further, we cannot assume that these three employees are a statistically significant sample absent further information about the number of employees in the workforce and their demographics. In sum, the appellant has not met his burden to prove a prima facie case of discrimination based on a disparate impact theory. We supplement the initial decision by adding this finding.

*The agency proved nexus.*

¶39    The administrative judge found that the appellant's off-duty misconduct had a nexus to the efficiency of the service because the deciding official credibly testified that the appellant's actions caused her to "los[e] confidence in [his] ability to perform his duties as a [F]ederal law enforcement officer." ID at 17-19; HT 2 at 2, 32, 37-38 (testimony of the deciding official). On review, the appellant argues that the deciding official "barely knew" him and "failed to attempt to obtain . . . evidence concerning [the appellant's] trustworthiness, his honesty and truthfulness." PFR File, Tab 5 at 11-12 (spelling error corrected). We discern no error in the administrative judge's nexus finding.

¶40    An agency may establish nexus between off-duty misconduct and the efficiency of the service by preponderant evidence by showing that the

misconduct adversely affects the agency's trust and confidence in the appellant's job performance. *Chin*, 2022 MSPB 34, ¶ 23. The deciding official explained that the appellant's conduct caused her to become concerned that he might not be able to make "sound correctional decisions . . . [about] what's best for the institution" as opposed to making those decisions based on "bias[] toward a group of inmates." HT 2 at 38 (testimony of the deciding official). A deciding official's unchallenged hearing testimony that the appellant's misconduct adversely affected the agency's trust and confidence in the appellant's job performance establishes a nexus between his off-duty misconduct and the efficiency of the service. *Adams v. Defense Logistics Agency*, 63 M.S.P.R. 551, 555-56 (1994). The appellant has not pointed to any requirement that a deciding official investigate whether a nexus exists, and we are aware of none. Further, we discern no error in the administrative judge's agreement with the opinion of the deciding official. ID at 18.

¶41 The appellant has not challenged the administrative judge's alternative finding that the agency established nexus because posting photographs with individuals associated with the Bandidos was antithetical to the agency's mission. ID at 18-19. We discern no error in her finding. *Doe v. Department of Justice*, 113 M.S.P.R. 128, ¶ 20 (2010) (providing that nexus may be proven by showing that an employee engaged in off-duty misconduct that is directly opposed to the agency's mission); *see Hunter v. Department of Justice*, 110 M.S.P.R. 219, ¶¶ 2, 7 (2008) (concluding that the agency proved nexus when the appellant, a BOP employee, provided information to a BOP inmate that, contrary to the agency's mission, could have been used to cause or perfect a plan to breach security). Therefore, the appellant's arguments regarding nexus do not provide a basis for granting review.

*The administrative judge did not abuse her discretion in her rulings denying some of the appellant's motions to compel and some of his proposed witnesses.*

¶42    We find unpersuasive the appellant's argument that the administrative judge erred by denying nine of his proposed witnesses and his motion to compel the agency to provide information regarding potential comparators.  PFR File, Tab 5 at 5-6, 21-25.   An administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony she believes would be irrelevant, immaterial, or unduly repetitious.  *Parker v. Department of Veterans Affairs*, 122 M.S.P.R. 353, ¶ 21 (2015).  Prior to the hearing, the administrative judge approved four witnesses requested jointly by the appellant and the agency, including the appellant himself, and another six witnesses requested by the appellant.   I-2 AF, Tab 24 at 1.   She denied 13 additional witnesses that the appellant requested.  *Id.*  She provided the appellant with an opportunity to call these witnesses on rebuttal.  *Id.* (discussion on the record).

¶43    The Board has found that an appellant fails to preserve for review an administrative judge's ruling excluding requested witnesses when he does not object at the hearing despite being offered an opportunity to do so.  *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 9 (2010).  After the appellant testified as the last approved witness in the case, the administrative judge provided the appellant's attorney with an opportunity to call the rebuttal witnesses if their testimony was material to a disputed fact.  February 28, 2022 Hearing Transcript (HT 3) at 90-94.  In response, the appellant named only four of the nine witnesses he lists on review.  *Compare id., with* PFR File, Tab 5 at 22-24.  To the extent that the appellant challenges the exclusion of another five of his requested witnesses, we find that he has not preserved this issue and do not consider it further.

¶44    As to the four witnesses the appellant sought to call on rebuttal at the hearing, they consisted of his former Captain and former Warden and two of his

former coworkers. HT 3 at 90-94 (discussion on the record). The administrative judge denied these witnesses because the issues on which the appellant's attorney indicated that the witnesses would testify were matters the appellant had already addressed in his testimony or that were not in dispute, or because the attorney indicated that they would testify about their opinions as to whether the appellant's conduct was acceptable. *Id.* In essence, she concluded that their testimony would be irrelevant, immaterial, or repetitious. On review, the appellant restates why he would like to call these witnesses and concludes that the testimony is relevant. PFR File, Tab 5 at 22-24. However, he does not address any error in the administrative judge's reasoning, and we discern none. Therefore, we decline to find that the administrative judge abused her discretion.

¶45    The appellant also argues that the administrative judge improperly denied two motions to compel information related to his discrimination claim. *Id.* at 24-25. An administrative judge has broad discretion in ruling on discovery matters, and the Board will not find reversible error in such rulings absent an abuse of discretion. *Dieter v. Department of Veterans Affairs*, 2022 MSPB 32, ¶ 25. We find no such abuse here.

¶46    The appellant argues that the administrative judge improperly denied, in part, his November 29, 2021 motion to compel. PFR File, Tab 5 at 24; I-2 AF, Tabs 16, 18. In particular, he argues that he was denied "information to ascertain whether the [BOP] had punished employees for membership, affiliation or association with groups such as the KKK or Neo-Nazi." PFR File, Tab 5 at 24. He argues that this information was relevant to his claim of national origin discrimination. *Id.* The appellant has not identified the specific discovery requests at issue. However, based on his allegations on review, he appears to be referring to his requests that the agency admit that it "ha[d] no record of any white employee of the agency who was removed from employment for his or her affiliation with the Ku Klux Klan," "being pictured with one or more members of

the Klux Klan," and "because of affiliation with a Neo-Nazo group." IAF Tab 16 at 16-17, 24.

¶47      In denying the appellant's motion as to these requests, the administrative judge determined that the specific information the appellant sought was not relevant or reasonably calculated to lead to the discovery of admissible evidence. I-2 AF, Tab 18 at 2; *see* 5 C.F.R. § 1291.72(a)-(b) (limiting the scope of discovery to relevant information, meaning information that appears reasonably calculated to lead to the discovery of admissible evidence). We agree. To be similarly situated for purposes of a Title VII claim, comparators must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *Pridgen*, 2022 MSPB 31, ¶ 27. The absence of discipline would not shed light on any of the necessary elements of establishing that an individual is a valid comparator for a claim of disparate treatment.

¶48      The appellant also appears to allege that the administrative judge erred in denying, in part, his August 10, 2022 motion to compel. PFR File, Tab 5 at 24-25; I-3 AF, Tab 8 at 5-6. We are not persuaded.

¶49      While this case was pending before the administrative judge, and after the record would otherwise have closed, the Board issued its decision in *Singh v. U.S. Postal Service*, 2022 MSPB 15. I-2 AF, Tab 45 at 1. As relevant here, the Board held that, while not outcome determinative, in most cases, an employee from another work unit or supervisory chain will not be a proper comparator for purposes of a claim of disparate penalties.[10] *Id.*, ¶ 13. In light of Singh, the administrative judge permitted the parties to conduct additional discovery "limited to the issue of disparate penalties under *Singh*." I-3 AF, Tab 2 at 1.

---

[10] The issue of disparate penalties is discussed further, below, in connection with the agency's argument on petition for review.

¶50    The appellant argues that the administrative judge abused her discretion in denying his August 10, 2022 motion to compel as it concerned his request for information about employees in the agency's Western Region who were disciplined "for being associated with a person or group that was labeled or identified as a security risk or security risk group or part of a criminal organization." PFR File, Tab 5 at 24-25. The administrative judge denied the appellant's motion to compel on the basis that the information requested would not "lead to probative admissible evidence" on the issue of disparate penalties. I-3 AF, Tab 14 at 1. On review, the appellant argues that the administrative judge's ruling prevented him from developing his national original discrimination claim. PFR File, Tab 5 at 25.

¶51    Given that discovery was limited to the issue of disparate penalties rather than discrimination, the appellant's claim that the administrative judge prevented him from discovering information related to national origin discrimination is inapposite. The appellant was employed in the North Central Region. IAF, Tab 13 at 12. As such, the appellant's request for information about employees in the Western Region was not reasonably calculated to lead to the discovery of admissible evidence on the issue of disparate penalties. *See Singh*, 2022 MSPB 15, ¶ 13. The appellant argues that information concerning Western Region employees is potentially relevant to his discrimination claim because J.M. and J.N. were disciplined by Western Region officials. PFR File, Tab 5 at 25. However, the appellant has not claimed that he was prevented from discovery of any details related to J.M. and J.N. J.M. and J.N.'s proposed removals and the resulting decision letters are in the record, and J.M. and J.N. also testified at the hearing. I-2 AF, Tab 31 at 178-95; HT 1 at 160-70 (testimony of J.N.); HT 2 at 106-26 (testimony of J.M.). Therefore, the appellant has failed to show any abuse of discretion by the administrative judge.

We deny the agency's petition for review.

¶52    The administrative judge found that the agency failed to prove that the deciding official properly considered three factors in deciding the appellant's penalty of removal. ID at 19-25. These factors concerned the agency's table of penalties, an employee who was issued a lesser penalty, and the appellant's rehabilitative potential. ID at 21-25. After weighing these and other relevant factors, the administrative judge concluded that the maximum reasonable penalty under the circumstances was a 21-day suspension. ID at 25. The agency contests the administrative judge's findings. PFR File, Tab 1 at 5-16. Upon review of the record, we agree with the administrative judge that the maximum reasonable penalty for the appellant's misconduct is a 21-day suspension.

¶53    When the agency's charge has been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Chin*, 2022 MSPB 34, ¶ 24; *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). In *Douglas*, 5 M.S.P.R. at 305-06, the Board listed 12 nonexhaustive factors that are relevant in assessing the penalty to be imposed for an act of misconduct, including the consistency of the penalty with any applicable agency table of penalties, the consistency of the penalty with those imposed upon other employees for the same or similar offenses, and the employee's potential for rehabilitation. In determining whether the selected penalty is reasonable, the Board gives due weight to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Chin*, 2022 MSPB 34, ¶ 24. However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination. *Id.*

*The deciding official properly considered the table of penalties.*

¶54    The administrative judge found that the agency failed to prove that the deciding official properly considered its table of penalties because the table was

not in the record. ID at 21. As the agency argues on review, and the appellant concedes, the table is in the record. PFR File, Tab 1 at 5-7, Tab 6 at 4-5; IAF, Tab 16 at 69-82. Additionally, as the agency correctly notes, the deciding official testified at the hearing that she reviewed the table of penalties and determined that the closest analogous penalty was agency penalty number 55, "Misconduct off the job," which carried a penalty range for a first offense from official reprimand up to removal. HT 2 at 25, 33-34 (testimony of the deciding official). Accordingly, we agree with the agency and reverse the administrative judge's finding that the agency failed to prove that the deciding official considered the table of penalties.

> *J.M. was not a valid comparator for purposes of determining the consistency of the appellant's penalty with those imposed upon other employees for the same or similar offenses.*

¶55      The administrative judge found that the deciding official failed to weigh the fact that J.M., who was disciplined for being pictured in a photograph with a Bandidos member that the appellant posted online, was issued a 21-day suspension. ID at 22-25; I-2 AF, Tab 31 at 190-95. In finding that J.M.'s situation was similar to the appellant's, the administrative judge reasoned that J.M. was in the same supervisory chain and worked at the same facility as the appellant. ID at 23. The agency disagrees that J.M.'s situation was similar to that of the appellant. PFR File, Tab 1 at 7-8, 11-16. We agree with the agency and reverse the administrative judge's findings concerning disparate penalties.

¶56      In assessing an agency's penalty determination, the relevant inquiry is whether the agency knowingly and unjustifiably treated employees who engaged in the same or similar offenses differently. *Singh*, 2022 MSPB 15, ¶ 14 (citing *Facer v. Department of the Air Force*, 836 F.2d 535, 539 (Fed. Cir. 1988)). As noted above, while not outcome determinative, in most cases, an employee from another work unit or supervisory chain will not be a proper comparator. *Id.*, ¶ 13. The agency argues that the administrative judge incorrectly determined that J.M.

was employed at the same facility as the appellant and was in the same supervisory chain. PFR File, Tab 1 at 12-13. Instead, it argues that J.M. was assigned to a different facility than the appellant at the time of his misconduct and was disciplined by different proposing and deciding officials. *Id*. at 8, 12. The agency is correct that at the time of the charged misconduct, J.M. was working at a different facility than the appellant and was assigned to a different supervisory chain. I-2 AF, Tab 16 at 121; HT 2 at 113-14 (testimony of the purported comparator employee). Further, as discussed above in connection with the appellant's discrimination claims, different proposing and deciding officials were involved in J.M.'s and the appellant's cases. To the extent that the administrative judge found otherwise, the record does not support her conclusion. However, this does not end the inquiry.

¶57     A valid comparator could also include an employee who, although not within the same work unit or supervisory chain, engaged in misconduct that has an unusually close connection to the appellant's misconduct. *Singh*, 2022 MSPB 15, ¶ 13 (citing *Williams v. Social Security Administration*, 586 F.3d 1365, 1368-69 (Fed. Cir. 2009). Such an unusually close connection could include, as here, involvement in the same underlying events. *Williams*, 586 F.3d 1365, 1366-69. In *Williams*, the Board affirmed the petitioner's removal for falsely claiming dependents on a tax return. *Id*. at 1366-67. In doing so, the petitioner was aided by a coworker who submitted fraudulent tax returns for a number of clients, of whom the petitioner was one. *Id*. The agency initially removed the petitioner's coworker, but a witness at the petitioner's Board appeal hearing testified that the agency later reemployed the coworker. *Id*. at 1368-69. The Board sustained the petitioner's removal. *Id*. at 1367.

¶58     The U.S. Court of Appeals for the Federal Circuit held that, even if the petitioner's coworker were not in the same chain of command, his allegedly more favorable treatment could be relevant to determining whether the petitioner was subject to a disparate penalty. *Id*. at 1368-69. The court reasoned that the

coworker's conduct was more serious than the petitioner's because the coworker, unlike the petitioner, "originated and organized the tax fraud scheme, actively carried it out and was criminally convicted for his participation in it." *Id.* The court remanded the case to the Board to develop the record on the coworker's potentially more favorable treatment and reconsider the issue of disparate penalties. *Id.*

¶59    In arguing that the administrative judge incorrectly concluded that the appellant and J.M. were valid comparators for purposes of a disparate penalties analysis, the agency points to the appellant's more serious misconduct. PFR File, Tab 1 at 12-14. The agency alternatively argues that the deciding official could not have knowingly treated the appellant differently because J.M. was removed after the appellant. *Id.* at 14-15.

¶60    The deciding official did not testify regarding whether or how she weighed J.M.'s discipline when removing him. As the agency correctly observes on review, the decision mitigating J.M.'s proposed removal to a 21-day suspension was not issued until 7 months after the decision to remove the appellant was issued in this case. IAF, Tab 13 at 16-19; I-2 AF, Tab 31 at 192. However, J.M.'s and the appellant's proposed removals were issued in the same month, January 2021, and were both based on the same charge of discreditable conduct arising out of the appellant's YouTube postings that included images of Bandidos. IAF, Tab 13 at 28-29; I-2 AF, Tab 31 at 190-91. Given the close factual connection between the two matters, we cannot presume, as the agency asks us to do, that the deciding official in the appellant's case had no knowledge as to what had happened or what might occur regarding J.M.'s proposed removal. PFR File, Tab 1 at 14-15.

¶61    However, we do not agree with the administrative judge that the agency's failure to explain the difference in treatment reflects that the appellant was treated more harshly than J.M. ID at 24-25. First, the nature of the appellant's misconduct was more serious than that of J.M. The appellant admittedly posted

on social media multiple photos of himself with members of the Bandidos. IAF, Tab 13 at 23-24, 28. J.M. appeared in one photo with a Bandidos that J.M. did not post–the appellant did. I-2 AF, Tab 31 at 190, Tab 44 at 7; IAF, Tab 13 at 49; HT 2 at 117-20, 124-25 (testimony of J.M.). On the other hand, the appellant's misconduct occurred in the context of a charity event he organized to honor a deceased, close family member, a significant mitigating factor that was not present for J.M. Therefore, despite the initial similarity between the misconduct committed by the appellant and J.M., we find that the circumstances surrounding their misconduct differ in meaningful ways. Consequently, we agree with the agency that J.M. was not a valid comparator employee, and we reverse the administrative judge's finding to this effect.

> *We agree with the administrative judge that the appellant's strong rehabilitative potential weighs in favor of mitigating the removal penalty.*

¶62 The administrative judge disagreed with the deciding official's conclusion that the appellant did not show rehabilitative potential. ID at 21-22. The agency contests this conclusion. PFR File, Tab 1 at 9-11. We agree with the administrative judge.

¶63 As noted above, one of the *Douglas* factors is the potential for the employee's rehabilitation. *Social Security Administration v. Levinson*, 2023 MSPB 20, ¶ 44, *aff'd*, 2024 WL 3579909 (Fed. Cir. July 30, 2024). The Board considers expressions of remorse as reflecting rehabilitative potential and thus militating in favor of a lesser penalty. *Id.* Conversely, an individual's rationalizations and lack of remorse may reflect little rehabilitative potential and thus be aggravating factors. *Id.*

¶64 Here, the appellant apologized for his behavior. The appellant admitted that he had posted the videos containing the offending photographs on YouTube and agreed to take care not to use such materials to publicize his son's charity in the future. IAF, Tab 13 at 24. He disclaimed any association with criminal activity. *Id.* at 23-24. He also stated that, as a consequence of being alerted to the

agency's concerns, he would refrain from engaging in the charged activity in the future.  *Id.* at 24; *see Shelly v. Department of the Treasury*, 75 M.S.P.R. 677, 684-85 (1997) (finding that the appellant had rehabilitation potential and mitigating her removal to a demotion based on, among other things, her testimony that she would not engage in the charged misconduct in the future).  He voluntarily removed the YouTube videos in May 2020, immediately after he was alerted to the fact that the agency had concerns about them, which was before the agency completed its investigation into the potential wrongdoing and well before his removal was proposed, providing further evidence of the appellant's acknowledgement of his wrongdoing.  I-2 AF, Tab 16 at 49; HT 1 at 96-97, 100-01 (testimony of an OIA Special Agent), HT 3 at 54-55 (testimony of the appellant); *see Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 15 (2003) (noting that an employee's immediate admission of misconduct and expression of remorse upon an initial inquiry by an agency is of some mitigating weight), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004).  During his oral reply to the proposal, the appellant apologized for the incident.  IAF, Tab 13 at 21.  Given the above, we agree with the administrative judge that the deciding official should have, but did not, acknowledge and consider the appellant's remorse.  IAF, Tab 13 at 17; ID at 21-22.

¶65    As the deciding official observed, the appellant also sought to justify his misconduct.  HT 2 at 35 (testimony of the deciding official).  She acknowledged that the appellant's desire to honor his stepson's legacy was a mitigating factor but also considered that "there were other pictures he could have posted" instead of "the pictures specifically with the Bandidos."  HT 2 at 35 (testimony of the deciding official).  However, we reject the implication that the fact that the appellant mounted a defense against the agency's charges indicates that he lacked remorse or failed to admit to wrongdoing, and we are not persuaded by the agency's attempt to argue otherwise.  PFR File, Tab 1 at 9-11; *see Raco v. Social Security Administration*, 117 M.S.P.R. 1, ¶¶ 12, 16 (2011) (affirming an

administrative judge's determination that an agency improperly concluded that an appellant who admitted to her misconduct and apologized lacked remorse because she also provided an explanation of her behavior and the mitigating factors that weighed in her favor).

> *We find that a 21-day suspension is the maximum reasonable penalty for the charge of discreditable behavior based on the specific facts of this case.*

¶66  When, as here, the Board sustains the agency's charge but finds that the agency failed to weigh the relevant mitigating factors, the Board may mitigate the agency's original penalty to the maximum reasonable penalty. *Raco*, 117 M.S.P.R. 1, ¶ 13. Because we agree with the administrative judge that the agency did not recognize the appellant's expressions of remorse, which suggest a strong rehabilitative potential, we conclude that she correctly decided to reweigh the *Douglas* factors. However, we have reversed her finding that the agency failed to prove that removal was consistent with its table of penalties and her determination that J.M. was given a disparate penalty for the same or similar misconduct. After reweighing the *Douglas* factors, we agree that a 21-day suspension, rather than removal, is the maximum reasonable penalty.

¶67  Like the administrative judge, we acknowledge the seriousness of the charge against the appellant, and we do not minimize its gravity. ID at 20-21; *see, e.g.*, *Brown v. Department of the Navy*, 229 F.3d 1356, 1361 (Fed. Cir. 2000) (stating that "off-duty conduct that is inconsistent with the agency's mission and that undermines confidence in the employee can . . . justify the employee's removal"). This is particularly true when, as here, the employee holds a supervisory position with law enforcement duties. *Luongo v. Department of Justice*, 95 M.S.P.R. 643, ¶ 13 (2004) (noting that a higher standard of conduct and a higher degree of trust are required of supervisory correctional officers as both law enforcement and supervisors), *aff'd*, 123 F. App'x 405 (Fed. Cir. 2005). *But see, e.g.*, *Reid v. Department of the Navy*, 118 M.S.P.R. 396, ¶ 32 (2012)

(acknowledging that law enforcement and supervisory status do not preclude penalty mitigation); *Ludlum v. Department of Justice*, 87 M.S.P.R. 56, ¶ 31 (stating that law enforcement status does not preclude penalty mitigation), *aff'd*, 278 F.3d 1280 (Fed. Cir. 2002).

¶68　　On the other hand, the appellant's discipline-free 18 years of service and 3 previous years of Outstanding performance ratings are mitigating factors. IAF, Tab 13 at 12, 17; I-2 AF, Tab 27 at 12, 19, 25; ID at 3, 25; *see Chin*, 2022 MSPB 34, ¶¶ 4, 28-33 (mitigating a removal for the serious charge of larceny to a 90-day suspension based on the appellant's 30 years of discipline-free Federal service, successful job performance, lack of repetition of the misconduct, the de minimis value of the items taken, and the fact that he did not have custody or control over the stolen items as a part of his official duties); *Reid*, 118 M.S.P.R. 396, ¶¶ 30-32 (finding that an appellant's admission to his errors and his 18 years of discipline-free service with positive performance, among other factors, warranted mitigating his demotion to a letter of reprimand). We also find that the fact that the appellant's misconduct arose in the context of a charity event honoring his late stepson is a significant mitigating factor.

¶69　　The appellant's conduct demonstrated an error in judgment that warrants discipline. However, he promptly took responsibility for his actions and indicated that he would not engage in similar conduct in the future. Considering his potential for rehabilitation along with his lengthy Federal service, positive performance record, lack of prior discipline, and the tragic personal circumstances surrounding his conduct, we find that a 21-day suspension is the maximum reasonable penalty under the unique circumstances of this case.

## ORDER

¶70　　We ORDER the agency to cancel the appellant's removal and substitute a 21-day suspension without pay, and to restore the appellant effective February 19, 2021. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir.

1984). The agency must complete this action no later than 20 days after the date of this decision.

¶71 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶72 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶73 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶74 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative receives</u> this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion. Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.